Thomas A. WILDER, District Clerk, Appellant

v.

Odell CAMPBELL, Thomas Ray Robertson, Shawnta Renea Coleman, Scott Wiernik, Tairhonda McAfee, Marybeth Lynn Jewell, and Diana J. Najera, Appellees.

No. 02–13–00146–CV.

Court of Appeals of Texas, Fort Worth.

April 3, 2014.

Joe Shannon, Jr., Criminal District Attorney, Charles M. Mallin, Chief of the Appellate Section, Christopher W. Ponder, Assistant Criminal District Attorney for

Tarrant County, Fort Worth, for Appellant.

Lee A. Difilippo, Austin, Linda H. Gregory, Thomas J. Stutz, Legal Aid of Northwest Texas, Fort Worth, for Appellees.

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

## OPINION

LEE GABRIEL, Justice.

Appellant Thomas A. Wilder, the district clerk of Tarrant County (the clerk), appeals from the trial court's temporary injunction barring him from collecting court costs from indigent parties "unless there were specific findings expressly stated in a final judgment or order providing that the indigent party's action resulted in monetary award and that the monetary award was sufficient to reimburse costs." We vacate the trial court's temporary injunction and dismiss the case.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Appellees [1] were divorce petitioners in actions filed in five of the seven family district courts in Tarrant County. Each Appellee filed an affidavit of indigency, which was either uncontested or the subject of a withdrawn or denied contest; thus, each Appellee was entitled to proceed in the divorce actions without payment of costs. See Tex.R. Civ. P. 145. After the respective family district court entered a final divorce decree, the clerk issued a bill of costs to each Appellee. When Appellees questioned the bills based on their status as indigents, the clerk relied on language included in each final divorce decree that each party would bear their own costs.[2] Indeed, each final divorce decree recited either (1) "costs of Court are to be borne by the party who incurred them" or (2) "[t]he Husband will pay for his court costs [and] the Wife will pay for her court costs." The final divorce decrees show that Appellees[3] agreed to the substance of all terms, including the costs language. However, none of the final divorce decrees at issue included specific findings that the litigants were "able to afford costs" after previously being found indigent. Tex.R. Civ. P. 145(d).

Relying on the costs language in the final divorce decrees, the clerk issued the bills of costs to Appellees. See Tex. Fam. Code Ann. § 6.708(a) (West Supp.2013), § 106.001 (West 2014). Although the final divorce decrees at issue were signed between November 24, 2008 and August 8, 2012, the clerk issued the bills of costs during the three-month period of May 7 to August 10, 2012. The clerk also issued certifications of default payment in each case and threatened to issue execution for the costs. See Tex.R. Civ. P. 129, 149.

---

1. Appellees are Diana J. Najera, Scott Wiernik, Tairhonda McAfee, Marybeth Lynn Jewell, Odell Campbell, Shawnta Renea Coleman, and Thomas Ray Robertson. Appellees are separated into two groups—one group containing four appellees, the other group containing three appellees—and each group is represented by its own counsel. We will treat these groups as one party; thus, any argument raised by one group of appellees will be considered to have been raised by both.

2. The dissenting opinion states that the costs assessments were in "form[ ]" divorce decrees and were "boilerplate adjudications of costs." However, only two of the seven decrees at issue are on a form, and both of these decrees were signed by the petitioner and included an acknowledgement that the petitioner "agrees to the terms of this decree."

3. The final divorce decree involving Wiernik does not include a page signed by the litigants.

None of the appellees had appealed from the final divorce decrees.

## B. PROCEDURAL BACKGROUND

In February 2013 and at least six months after the clerk issued the disputed bills of costs, Appellees filed two petitions against the clerk in civil district court seeking to enjoin him from assessing costs against Appellees and other, similarly situated litigants.[4] After the two sitting judges recused themselves, the regional presiding judge assigned a senior district judge to hear one of the petitions.[5] *See* Tex.R. Civ. P. 18b. The assigned judge consolidated the petitions on the parties' agreed motion. *See* Tex.R. Civ. P. 174(a).

On April 15, 2013, the trial court held an evidentiary hearing on the requests for a temporary injunction. That same day, the trial court[6] entered an order temporarily enjoining the clerk from attempting to collect costs from indigent litigants:

1. [Appellees] have demonstrated a probable right to prevail on the trial of this cause on their claims that:

  a. [The clerk] has a policy, practice, and procedure that his office will seek to collect costs against parties who have filed an affidavit on indigency under Tex.R. Civ. P. 145 where the affidavit was not contested, where the contest was denied, or where the contest was withdrawn based on judgments or final orders in which there was no specific finding expressly stated in the judgment or final order that

the indigent party's action resulted in a monetary award, and no specific finding expressly stated in the judgment or final order that there was sufficient monetary award to reimburse costs;

  b. The collection of costs policy, practice and procedure of [the clerk] described above violated Tex.R. Civ. P. 145;

2. [The clerk] intends to continue enforcing the collection of costs policy, practice, and procedure described above against [Appellees];

3. If [the clerk] carries out that intention, he will thereby tend to make ineffectual a judgment in favor of these [Appellees], in that [the clerk] has threatened to issue an execution for costs to levy upon [a] sufficient amount of [Appellees'] property to satisfy the alleged debts; and

4. Unless [the clerk] is enjoined from carrying out the collection of costs policy, practice, and procedure described above, [Appellees] will suffer irreparable harm without any adequate remedy at law, including but not limited to the fact that the applicable trial courts no longer have plenary power and all appeal deadlines had passed prior to the first collection letter being sent.

The trial court further set a trial date and ordered that the temporary injunction would remain in effect until it entered a final order. *See* Tex.R. Civ. P. 683. The clerk filed a notice of accelerated appeal

4. One petition was styled "Petition for Writ of Mandamus, Application for Temporary Restraining Order, Petition for Writ of Temporary and Permanent Injunction, and Petition for Declaratory Judgment," while the other was styled "Original Petition for Declaratory Judgment, Application for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Writ of Mandamus."

5. The record does not include an assignment order for the other petition in which the trial court also recused itself.

6. For the remainder of this opinion, "the trial court" will refer to the court issuing the preliminary injunction against the clerk. "Family district court" will refer to the court entering the final divorce decree at issue.

from the trial court's interlocutory order granting the temporary injunction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (West Supp.2013); Tex. R.App. P. 28.1(a).

In three issues, the clerk asserts that the trial court erred because (1) any injunction was required to be tried in the court that rendered the judgment—here, the respective family district court; (2) Appellees failed to certify a class, which is a prerequisite for the trial court to enjoin the clerk as to similarly-situated persons; and (3) Appellees had an adequate remedy at law—a motion to re-tax costs filed in the family district court that entered the final divorce decree.[7] The clerk does not argue that the required findings of rule 145(d) that Appellees were "able to afford costs" were made or that Appellees were not, in fact, indigent.[8] Tex.R. Civ. P. 145(d); *see also* Tex.R. Civ. P. 141 (allowing court, "for good cause," to adjudge costs other than "as provided by law or these rules").

## II. STANDARD AND SCOPE OF REVIEW

■ A temporary injunction is warranted if the movant shows (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002) (op. on reh'g). In short, the purpose of a temporary injunction is to preserve the status quo pending trial. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993).

7. In his brief and at oral argument, the clerk asserted that if Appellees filed motions to re-tax costs in the appropriate family district court, such motions would be timely filed.

8. Rule 145(d) provides that a litigant's indigency status may be withdrawn if the litigant's circumstances change:

■ We review an order granting a temporary injunction under an abuse-of-discretion standard, which mandates reversal only if the trial court acted without reference to any guiding rules or principles. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex.2002) (orig. proceeding); *Burgess v. Denton Cnty.*, 359 S.W.3d 351, 356–57 (Tex.App.-Fort Worth 2012, no pet.). Our scope of review is limited to the validity of the order granting the temporary injunction. *Burgess*, 359 S.W.3d at 356. Therefore, we are not to determine the merits of the movant's underlying claims. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978).

The clerk argues in his first issue, however, that the trial court did not have jurisdiction to enter the temporary injunction because it did not enter the judgments sought to be executed. Whether the trial court has subject-matter jurisdiction is an issue of law that we review de novo.

## III. TRIAL COURT'S JURISDICTION TO ENTER TEMPORARY INJUNCTION

■ To support its jurisdictional argument, the clerk relies on section 65.023(b), which provides that "[a] writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered." Tex. Civ. Prac. & Rem.Code Ann. § 65.023(b) (West 2008). Because this provision controls venue and jurisdiction for a suit requesting an injunction to stay execution of a facial-

If the court finds at the first regular hearing in the course of the action that the party (other than a party receiving a governmental entitlement based on indigency) is able to afford costs, the party must pay the costs of the action. Reasons for such a finding must be contained in an order.
Tex.R. Civ. P. 145(d).

ly-valid judgment, the clerk asserts that the trial court did not have subject-matter jurisdiction to temporarily enjoin the clerk's efforts to collect costs from Appellees. *See McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

Appellees stated at oral argument that the strongest case supporting their argument that the trial court had jurisdiction to enter the injunction is *Carey v. Looney*, 113 Tex. 93, 251 S.W. 1040 (1923). The supreme court in *Carey* interpreted the predecessor statute to section 65.023(b) and held that injunctions may, in some instances, be issued by a court that did not enter the complained-of judgment:

> [I]f the court in which the injunction suit is brought has general jurisdiction over the subject-matter, and the relief may be granted, independently of the matters adjudicated in the suit whose judgment or processes thereunder are sought to be restrained, the statute has no application.

*Id.* at 1041. Appellees assert that because the trial court had general jurisdiction over their request for a declaratory judgment against the clerk, the trial court could issue the injunction. However, *Carey* is not as broad as Appellees urge. The supreme court specifically stated that the predecessor statute to section 65.023(b) mandated that an injunctive request had to be filed in the court that issued the judgment "[i]f, in order to grant the relief, it is necessary to set aside or modify the judgment, *or to regulate the processes issued thereunder*, and the attack is made by a party to the judgment." *Id.* (emphasis added). Here, the trial court, in order to grant the requested relief, would clearly

have to "regulate the processes" by which the clerk collects the costs from parties to the judgments—Appellees—under the family district courts' final divorce decrees.

■ Appellees further argue that because they did not appeal from their final divorce decrees,[9] section 65.023(b) is inapplicable. But as the supreme court has made clear, section 65.023(b) is "mandatory, requiring the injunction suit to be returnable to and tried in the court rendering the judgment, if the attack is made by a party to the judgment and if, in order to grant the relief, it is *necessary to regulate the processes issued under the judgment*." *Evans v. Pringle*, 643 S.W.2d 116, 118 (Tex.1982) (emphasis added). In *Evans*, two criminal defendants failed to appear for trial, and the criminal trial court with jurisdiction over the defendants' indictments entered judgments of forfeiture against the defendants' sureties. *Id.* at 117. The sureties appealed the forfeiture judgments, and the court of criminal appeals affirmed. *Id.* The appropriate clerk then attempted to execute on the forfeiture judgments to collect post-judgment interest even though the forfeiture judgments did not provide for post-judgment interest. *Id.* The sureties brought a civil action seeking to enjoin the sheriff from levying on their property to satisfy the writs of execution. *Id.* The supreme court held that the sureties were required, under the predecessor statute to section 65.023(b), to seek relief in the criminal court that rendered the judgment that was the subject of the sheriff's collection efforts. *Id.* at 118.

Appellees attempt to distinguish *Evans* and point to our later decision in *Hughes v. Morgan*, 816 S.W.2d 557 (Tex.App.-Fort

---

9. Indeed, Appellees clearly state that they "are not challenging the individual court judgments" and that even if they wanted to appeal the clerk's attempts to execute on his bills of costs, "that opportunity was foreclosed due to the loss of plenary power by the trial court."

Worth 1991, writ denied), to support their argument that section 65.023(b) does not apply once a judgment is final for appellate purposes. In *Hughes,* a criminal district court entered a default judgment against a bond surety in a bond-forfeiture proceeding. *Id.* at 558. The surety appealed the judgment and filed a supersedeas bond. *Id.* After the clerk attempted to disqualify the surety from acting in that capacity in other cases based on the default judgment, a civil district court enjoined the enforcement of the judgment. *Id.* We applied section 65.023(b) and held that the civil district court did not have jurisdiction "to affect a judgment on appeal from another court." *Id.* at 559. Although the judgment in *Hughes* was appealed, the judgment in *Evans* was not on appeal and, in fact, the appellate timetable had expired. The dispositive issue in both *Evans* and *Hughes* was the power of one court to enjoin the enforcement of the judgment of another court. *Evans,* 643 S.W.2d at 118; *Hughes,* 816 S.W.2d at 559. Indeed, *Hughes* expressly relied on *Evans* and held that

> the provisions of [section 65.023(b) ] are mandatory and an injunction suit is returnable to and must be tried 'in the court rendering the judgment, if the attack is made by [a] party to the judgment and if, in order to grant the relief, it is necessary to regulate the processes issued under the judgment.'

*Hughes,* 816 S.W.2d at 559 (quoting *Evans,* 643 S.W.2d at 118). Thus, *Evans* mandates that the trial court that renders the judgment is the only court that may enjoin its execution or regulate the judgment's processes even if plenary power is absent.[10] *Evans,* 643 S.W.2d at 117–18. We sustain the clerk's first issue.

Before concluding, we emphasize that courts are to be open to all, "including those who cannot afford the costs of admission." *Higgins v. Randall Cnty. Sheriff's Office,* 257 S.W.3d 684, 686 (Tex.2008) (citing open-courts provision of Texas Constitution). Our decision today does not retreat from this tenet or minimize its importance. Indeed, courts should tread lightly in this arena and carefully interpret the rules and statutes regarding indigency status and the award of costs. Our ultimate holding under section 65.023(b) is merely one of jurisdiction and venue, not access: the trial court did not have jurisdiction to enjoin the processes by which the family district courts' final divorce decrees were executed by the clerk.

The dissenting opinion's efforts to protect indigent parties' access to the courts and discourage the clerk's costs-collection efforts from indigent litigants are laudable, and we do not necessarily disagree. However, we are limited by the scope and standard of our review of the trial court's injunction—which expressly prohibit a determination of the merits of the dispute—and by our inability to address issues that are not properly before us based on the trial court's lack of subject-matter jurisdiction. In short, we cannot address the propriety of the clerk's admitted policy of attempting to collect costs from indigent parties in the absence of the trial court's specific findings under rule 145(d). Accordingly, the dissenting opinion's discussion of the propriety of the clerk's policy is beyond the scope of our review given the procedural posture of this accelerated appeal. Any protracted discussion of

---

10. Appellees argue that section 65.023(b) is "limited to efforts to stay proceedings in a suit or execution on a judgment," neither of which is present in this case. But the action sought to be enjoined—the collection of costs provided in the judgment—is squarely within the purview of section 65.023(b), i.e., execution on a judgment.

each divorce decree, each costs award, the rules applicable to indigent parties, and the propriety of the clerk's execution on judgments involving indigent parties would be premature, advisory, and not necessary to the disposition of this appeal. *See* Tex.R.App. P. 47.1; *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex.1999); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). Therefore, we are not ignoring case law applicable to indigent litigants as the dissent suggests. We are simply deciding the preliminary and operative question of whether the trial court had jurisdiction over the subject matter of Appellees' petitions. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting if court does not have jurisdiction, its opinion addressing any issues other than jurisdiction is advisory); *Sw. Bell Tel., L.P. v. Ballenger Constr. Co.*, 230 S.W.3d 489, 491–92 (Tex.App.-Corpus Christi 2007, no pet.) (recognizing trial court's jurisdiction over case or controversy must first be addressed before merits of appeal are reached to avoid appellate court rendering advisory opinion). We hold it did not under section 65.023(b).

## IV. CONCLUSION

Because the trial court did not have subject-matter jurisdiction to enjoin the clerk's efforts to execute on judgments entered by family district courts, we vacate the trial court's order granting Appellees a temporary injunction and dismiss

the case. *See* Tex.R.App. P. 43.2(e), 43.3. Based on this conclusion, we do not need to address the clerk's remaining issues. *See* Tex.R.App. P. 47.1.

GARDNER, J., filed a dissenting opinion.

ANNE GARDNER, Justice, dissenting.

I respectfully dissent. The trial court had jurisdiction to grant the temporary injunction against the district clerk to stay his attempts to tax and collect court costs from Appellees and other persons similarly situated. It is undisputed, and the majority acknowledges, that each Appellee filed an affidavit of indigence with their petitions, that all of their affidavits were uncontested, and that Appellees were thus entitled to proceed in their divorce actions without payment of costs pursuant to rule 145.[1]

Texas Rule of Civil Procedure 145, which prescribes the procedure to be followed for indigent parties to be able to proceed in the trial courts without payment of costs, was adopted "to protect the weak against the strong, and to make sure that no man should be denied a forum in which to adjudicate his rights merely because he is too poor to pay the court costs." *Pinchback v. Hockless*, 139 Tex. 536, 538, 164 S.W.2d 19, 19–20 (1942).

Legal aid and pro bono programs are able to help only an estimated twenty percent of the six million Texans who qualify for legal aid and pro bono services in civil matters.[2] In particular, the vast majority

---

1. In one of these cases, the district clerk initially contested the affidavit of indigence but withdrew the contest before a hearing took place.

2. "Significant decreases in funding to legal aid programs from reduced [IOLTA] revenue and federal funding cuts, combined with one of the highest poverty rates in the nation," means "fewer legal aid lawyers to help the

growing number[ ] of [indigent persons needing legal] assistance." Texas Access to Justice Commission, *A Report to the Supreme Court Advisory Committee from the Texas Access to Justice Commission on the Court's Uniform Forms Task Force*, at 3 (Apr. 6, 2012) (footnote omitted), *available at* http://www.supreme.courts.state.tx.us/rules/pdf/SCAC_

of pro se petitioners are in family law cases.[3] In response to the problems regarding rule 145, including the one presented by this case, the Texas Access to Justice Commission has proposed substantially revising current rule 145. The Commission presented its proposed revisions, which specifically address the issue in this case among other problems, at the Supreme Court Advisory Committee's meeting on September 28, 2013, and the proposal is pending before the supreme court.[4]

In the meantime, months, and in some cases, years after their divorce decrees were final and no longer appealable, the district clerk's office has sent Appellees cost bills retroactively charging them for court costs, stamped in red as "past due," with the amount paid shown as "$0.00," and demanding full payment ($308.00 in Appellee Coleman's case) within ten days, in most cases followed by a "Clerk's Certification of Payment Default" threatening levies on Appellees' property for failure to make payment "immediately." [5]

The temporary injunction of which the district clerk complains by this appeal orders him to refrain from carrying out the policy and practice he acknowledges he instituted beginning in November 2010, seeking to collect court costs he determined were owed by pro se petitioners in divorce cases such as Appellees, notwithstanding their uncontested affidavits of indigence and notwithstanding that none of the final divorce decrees contained findings that Appellees' actions had resulted in monetary awards sufficient under rule 145(d) for reimbursement to the county for costs.

### JURISDICTION

The majority accepts the district clerk's preliminary argument that the trial court in this case lacked jurisdiction to issue the temporary injunction because it was not the court that rendered the divorce judgments, as required by civil practice and remedies code section 65.023(b). *See* Tex. Civ. Prac. & Rem.Code Ann. § 65.023(b) (West 2008) (providing that "[a] writ of injunction granted to stay ... execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered.").

I cannot agree. It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502–03 (Tex. 2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 1017, 178 L.Ed.2d 829 (2011), (citing *Brannon v. Pac. Emp'rs Ins. Co.*, 148 Tex. 289, 294, 224 S.W.2d 466, 469 (1949)). Appellees' pleadings do not seek to stay execution on the judgments, attack the divorce judgments, question their validity, or

Access_to_Justice_report_040612.pdf (last visited Mar. 27, 2014).

**3.** Brief for Appellees Odell Campbell, et al. at TAB A, *Wilder v. Campbell, et al.*, No. 02–13–00146–CV, 2013 WL 3892969 (Tex.App.-Fort Worth filed June 27, 2013). Over 57,000 family law petitioners proceeded pro se in 2013. *See* Office of Court Administration, *Annual Report for the Texas Judiciary, Fiscal Year 2013*, at 46, 48, http://www.txcourts.gov/pubs/AR2013/AR13.pdf (last visited Mar. 27, 2014).

**4.** The transcript from the September 28, 2013 session of the Supreme Court Advisory Committee is available at http://www.supreme.courts.state.tx.us/rules/scac/2013/transcripts/sc09282013.pdf (last visited on Mar. 27, 2014).

**5.** Upon filing their petitions and affidavits of indigence, at least one of the indigent Appellees acting pro se had received receipts from the filing clerk showing that the total amount of their filing and service fees was "received" ($308.00 in Appellee Coleman's case) and "charged to PAUPER'S AFFIDAVIT."

present defenses that should have been adjudicated therein. Instead, Appellees allege that the district clerk has failed to perform his own nondiscretionary, ministerial duty to correctly tax costs in Appellees' divorce cases. Under rule 145(d), absent a contest to an affidavit of indigence, the indigent party may be held liable for costs in one more circumstance, that is: "If the party's action results in monetary award, and the court finds sufficient monetary award to reimburse costs, the party must pay the costs of the action." Tex.R. Civ. P. 145(d). Appellees assert that they owe no costs because their affidavits of indigence were uncontested and because their divorce decrees contain no finding that they received a "sufficient monetary award to reimburse costs" as required by rule 145(d). Appellees thus assert that the district clerk improperly taxed and is improperly attempting to collect any court costs from Appellees and other similarly situated parties, in violation of rule 145(d).

A century-old line of cases establishes that section 65.023(b) (including its predecessors) only applies to a suit seeking an injunction "attacking the judgment, questioning its validity, or presenting defenses properly connected with the suit in which it was rendered, and which should have been adjudicated therein." *Kruegel v. Rawlins*, 121 S.W. 216, 217 (Dallas 1909), *writ ref'd*, 103 Tex. 86, 124 S.W. 419 (1910) (holding that injunction imposed by one court that did not attack validity of judgment of another court but merely sought to enjoin the clerk's execution on the judgment at the instance of one not entitled to have it enforced was not barred by statute); *see Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 860–61 (Tex.App.-San Antonio 2003, no pet.) (op. on reh'g) (holding injunction to prevent "misuse" of judgment of another court by execution against nonparty not barred by statute); *see also Shor*

*v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 747–48 (Tex.App.-Houston [1st Dist.] 2013, no pet.) (holding statute did not defeat jurisdiction where applicants did not attack the merits of the judgment, did not question the validity of that judgment, and did not present defenses to that judgment that should have been adjudicated in the underlying proceeding).

Section 65.023(b) does not defeat jurisdiction here. It must be emphasized that Appellees do not attack the validity of the divorce judgments. Specifically, they do not complain of the language of the judgments upon which the district clerk relies that Appellees shall bear their own costs or pay their own costs. Appellees rely upon their uncontested affidavits of indigence to urge that there are no costs to be charged to them. As the trial judge succinctly stated at the conclusion of the hearing on the temporary injunction:

> THE COURT: The court costs will be paid—or "the wife will pay for her court costs" does not create court costs in view of a 145 affidavit because there are no court costs. And she will pay for her court costs that doesn't create court costs where none exist. And none exist because of 145.
>
> MR. PONDER: Well, Your Honor, I—
>
> THE COURT: So that doesn't—you know, that doesn't—not only does it not create court costs, we don't know how much, if any, and there's not any.

*Carey v. Looney*, 113 Tex. 93, 251 S.W. 1040 (1923), relied upon by Appellees and cited by the majority, long ago stated the test as to when the predecessor statute to section 65.023(b) does not apply. A portion of the test is quoted by the majority, but the rest of the statement of the test supports Appellees' position that the trial court has jurisdiction:

On the other hand, if the court in which the injunction suit is brought has general jurisdiction over the subject-matter, and the relief may be granted *independently of the matters adjudicated in the suit whose judgment or processes thereunder are sought to be restrained,* the statute has no application.

*Id.* at 96, 251 S.W. at 1041 (emphasis added).

The majority focuses on the term "processes thereunder" in the above quote, reasoning that, to grant the relief requested by Appellees, the trial court "would clearly have to 'regulate the processes'" of taxing and collecting costs from Appellees under the judgments, thus defeating its jurisdiction. But *Carey* did not hold that the statute would defeat jurisdiction as to any and every injunction suit seeking to "regulate the processes" under a judgment obtained in a different court. *Id.* Rather, the opinion in *Carey* said that the statute would not prevent injunctive relief if the relief sought could be granted *"independently of the matters adjudicated in the suit"* under which the judgment or processes thereunder were sought to be restrained. *Id.* The injunctive relief granted against the district clerk here restrains only his taxing and collection of costs, independently of any matters adjudicated by the divorce decrees.

The principal cases relied on by the district clerk and the majority are *Evans v. Pringle,* 643 S.W.2d 116 (Tex.1982), and this court's decision in *Hughes v. Morgan,* 816 S.W.2d 557 (Tex.App.-Fort Worth 1991, writ denied), for the proposition that one court lacks power to enjoin enforcement of another court's judgment. Those cases are distinguishable because each involved an injunction that was *dependent* on the merits adjudicated (albeit by default) by a sister court's judgment. *See Evans,* 643 S.W.2d at 117–18 (holding predecessor statute to section 65.023(b) precluded injunction to stay writ of execution to collect post-judgment interest on the *amount* of a sister court's judgment); *Hughes,* 816 S.W.2d at 559 (setting aside temporary injunction that stayed *enforcement of the judgment* of another court while it was on appeal). Those cases provide no guidance here. Section 65.023(b) did not deprive the trial court of jurisdiction to grant the temporary injunction against the district clerk's nondiscretionary ministerial public duties of taxing and collecting court costs, which was independent of the validity or merits of the judgments of the divorce cases.

The divorce decrees assessed costs by boilerplate language in the decrees, which are judgment forms ordering either that costs of court "are to be borne by the party who incurred them," or that "[t]he Husband will pay for his court costs; the Wife will pay for her court costs."[6] At its core, the opinion of the majority accepts the district clerk's stated justification for taxing costs against Appellees that this language in the judgments trumps rule 145. But rule 145 expressly states that uncontested affidavits of indigence serve *"[i]n lieu of* paying or giving security for

---

**6.** Two of the judgments state on their face that they are copyrighted forms provided by "Texas Partnership for Legal Access." These do-it-yourself forms are available by link from http://www.txcourts.gov/pubs/pubs-home.asp to http://texaslawhelp.org/ (last visited on Mar. 27, 2014). Previous forms that were online when these Appellees filed contained the language used in their decrees, and are still available on some websites. *See* http://txdivorce.org/wp-content/uploads/2013/07/Div_No_Kids_Petition_Final–1.pdf. Two appear to be completely pro se and used forms but it seems unclear where these forms were obtained. The other three judgments appear to be standard forms utilized by Legal Aid of NorthWest Texas, which provided representation to those petitioners in their divorce cases.

costs of an original action." Tex.R. Civ. P. 145(a) (emphasis added). There is no conflict. The judgments do not determine the amount of costs owed; the district clerk does that, as further discussed below. Because Appellees' uncontested affidavits of indigence serve "in lieu of" payment of costs, and because the divorce decrees do not contain the findings required by rule 145(d) that Appellees received "sufficient monetary award[s] to reimburse costs," the district clerk's nondiscretionary ministerial duty required that he tax no amount of costs against Appellees.

Appellees' pro bono counsel from the Texas Advocacy Project argued Appellees' position at the temporary injunction hearing, making clear that Appellees are not attacking the judgments but, rather, are complaining of the district clerk's taxing any costs against them under rule 145:

> MS. DIFILIPPO: Yes. Please, Your Honor.
>
> We are not seeking the injunction on a permanent judgment order. In fact, if I understand Mr. Ponder's argument, we are seeking an injunction against the district clerk for not properly performing a nondiscretionary ministerial duty. So it had nothing to do with the seven named plaintiffs in their underlying proceedings and the judgment that came out of those underlying proceedings. That is not at all what our argument is.
>
> . . . .
>
> —we are not—Let me reiterate that, we are not disputing the language in the divorce decrees that say he should pay his cost and she should pay her cost, which is what we believe the district clerk is relying on to send the bills out to indigent litigants. That is not our contention. We are not disputing that judgment. It has nothing to do with that. It's compelling enforcement of a nondiscretionary ministerial public duty.

## APPELLEES' INDIGENCE IS CONCLUSIVE

The supreme court has held that uncontested affidavits of indigence *conclusively* confer indigent status. Put simply, under rule 145, "[a]n uncontested affidavit of inability to pay is conclusive as a matter of law." *Equitable Gen. Ins. Co. v. Yates*, 684 S.W.2d 669, 671 (Tex.1984). In *Yates*, the supreme court made clear that rule 145 is more than a procedural vehicle to allow an indigent litigant to proceed without payment of costs. The rule is a testament to the judiciary's strong commitment that indigent litigants are guaranteed a forum that is not to be blocked by financial burdens that would defeat that right. *See id.* In *Yates*, the trial court conditioned the grant of a new trial to an employee in a worker's compensation case on payment to the carrier for its attorney's fees in preparing and presenting its response. *Id.* at 670. Supported by an uncontested affidavit of indigence, Yates responded that he was unable to pay that amount. *Id.* Holding that Yates's uncontested affidavit of indigence was conclusive as a matter of law, the supreme court ruled that the trial court abused its discretion by denying him a new trial. *Id.* at 671. Recognizing that attorney's fees are not technically "costs," the supreme court looked to the spirit and purpose of rule 145, to guarantee open courts for those unable to pay costs, and rejected the condition imposed by the trial court that the indigent employee must pay the carrier's attorney's fees before being allowed to continue his suit:

> Although we recognize the general rule that attorney's fees are not costs, the assessed fees in the present case will be considered in light of Rule 145 and the rule's intended purpose to guarantee a forum to those unable to pay court costs.

Accordingly, the trial court abused its discretion by imposing such a monetary condition in the face of an uncontested affidavit of inability to pay.

*Id.* (citations omitted).

*Yates,* in essence, held that a rule 145 uncontested affidavit of indigence trumped a trial court's express ruling imposing a monetary condition on the plaintiff's ability to continue his suit. The same reasoning must apply that a rule 145 uncontested affidavit of indigence trumps a district clerk's attempt to retroactively tax costs against an indigent party. The only exception is set forth in rule 145(d), mentioned above, which allows costs to be assessed despite an uncontested affidavit when a "party's action results in [a] monetary award ... sufficient ... to reimburse costs," and the rule further requires that the trial court must expressly so find. Tex.R. Civ. P. 145(d). There is no such finding in Appellees' divorce judgments.

As stated in *Yates,* the intended purpose of rule 145 is "to guarantee a forum to those unable to pay court costs." 684 S.W.2d at 671. Rule 145 is the key to the courthouse without which indigent parties are denied entry. Allowing a district clerk to tax costs against indigent litigants in divorce cases despite uncontested affidavits of indigence, renders the guarantee of a forum under rule 145 illusory and locks the courthouse door for thousands of indigent parties in Texas who need it most.[7] Statistics from the Office of Court Administration (OCA) show that 4,011 family law cases were filed in Tarrant County by pro se petitioners in fiscal year 2013[8] but no figures are available from OCA as to how many of those petitioners were indigent.

The district clerk cites no case law or statutory support for an exception allowing a district clerk or trial court to override rule 145 in divorce cases, and there is case law firmly enforcing the policies and provisions of rule 145 and *Yates* in the family law context.[9] *See, e.g., In re Villanueva,* 292 S.W.3d 236, 246 (Tex.App.-Texarkana 2009, orig. proceeding) (holding trial court abused its discretion by ordering Villanueva to pay advance costs and fees for attorney ad litem and social study administrator because, based on her uncontested affidavit of indigence, she was indigent as a matter of law and such orders effectively denied her a forum in which to dissolve her marriage and resolve custody issues, and "[t]hough undoubtedly driven by its duty to determine the best interest of the children, the trial court exercised its discretion in a manner inconsistent with the conclusive effect as to indigence provided by Rule 145 of the Texas Rules of Civil Procedure"); *Shirley v. Montgomery,* 768 S.W.2d 430, 434 (Tex.App.-Houston [14th Dist.] 1989, orig. proceeding) (holding trial court abused its discretion by striking wife's pleadings and prohibiting her from introducing any evidence at trial as sanctions for failing to pay $15,000 to guardian ad litem in light of evidence of wife's finan-

---

7. *See generally* Texas Access to Justice Commission, *supra* note 2.

8. Office of Court Administration, *District Courts, Summary of Other Civil and Family Case Activity, September 1, 2012 to August 31, 2013,* at 7 http://www.courts.state.tx.us/pubs/AR2013/dc/10–OtherCivilAndFamilyActivityByCounty.pdf (last visited Mar. 27, 2014).

9. The district clerk apparently chose pro se, indigent petitioners in divorce cases from which to attempt to collect costs on the theory that trial courts in dissolution of marriage or SAPCR cases have discretion to assess costs other than as provided in the civil rules, citing family code sections 6.708(a) and 106.001. Tex. Fam.Code Ann. §§ 6.708(a) (West Supp. 2013), 106.001 (West 2014). But neither those sections nor the cases cited speak to a trial court's ability to assess costs against an indigent party.

cial inability to pay the ad litem's fee and that it was in the best interest of children for parent to have access to and availability of a forum); *Cook v. Jones,* 521 S.W.2d 335, 338 (Tex.Civ.App.-Dallas 1975, writ ref'd n.r.e.) (holding rule 145 uncontested affidavit of indigence relieved wife of obligation to pay sheriff's office for substituted service by publication so as to allow her meaningful access to the court, citing rule 145's purpose of allowing access to a forum for indigent litigants).

These cases illustrate the courts' continued commitment to the purpose and policy embodied in rule 145. Taxing of court costs in family cases, as in any other civil case, against a party deemed indigent as a matter of law under rule 145, absent any contest or findings as required by rule 145(d), flies in the face of the rule, the policy and purpose of guaranteeing access to a forum by indigent litigants, and "[t]he concept that courts should be open to all, including those who cannot afford the costs of admission, [as] firmly embedded in Texas jurisprudence." *Higgins v. Randall Cnty. Sheriff's Office,* 257 S.W.3d 684, 686 (Tex.2008); *see* Tex. Const. art. I, § 13.

I appreciate the district clerk's many responsibilities in managing his office with filings in what he estimates as over 59,000 cases over the past year for the many civil, criminal, and family district courts in this county and the need to collect costs to keep the judicial system open and running, especially through difficult financial times. His concern here is with a perceived conflict between the divorce decrees' assessments of court costs versus rule 145. But Appellees do not challenge those boilerplate adjudications of costs that are routinely assessed in thousands upon thousands of judgments of every type. The point is that the divorce decrees do not determine the *amount* of costs to be borne by Appellees.

"[T]he court's role is to adjudicate which party or parties is to bear the costs of court, 'not to determine the correctness of specific items." *Madison v. Williamson,* 241 S.W.3d 145, 158 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). As a result, a judgment may state that costs are assessed against a certain party, but it should not state the amount taxed as costs. *Id.; see also Williams v. Colthurst,* 253 S.W.3d 353, 363 (Tex.App.-Eastland 2008, no pet.). Conversely, the taxing of costs is not an adjudication by the court. *Reaugh v. McCollum Exploration Co.,* 140 Tex. 322, 325, 167 S.W.2d 727, 728 (1943). Tabulating the specific item amounts to be taxed as costs is a " 'ministerial duty performed by the clerk.'" *Wright v. Pino,* 163 S.W.3d 259, 261 (Tex.App.-Fort Worth 2005, no pet.) (quoting *Pitts v. Dallas Cnty. Bail Bond Bd.,* 23 S.W.3d 407, 417 (Tex.App.-Amarillo 2000, pet. denied) (op. on reh'g)). It is the ministerial duty of the clerk that is at issue here, and I agree with Appellees and the trial court that the proper amount to be taxed to Appellees was no court costs, or "$0.00."

## NO ADEQUATE LEGAL REMEDY

The district clerk further argues that the temporary injunction was not appropriate because a motion to retax costs is an "adequate remedy at law" to correct the amount of costs he has now taxed to them under the judgments and should be filed by each Appellee in each court in which the costs accrued. *See Wood v. Wood,* 159 Tex. 350, 357–58, 320 S.W.2d 807, 812–13 (1959); *Reaugh,* 140 Tex. at 325, 167 S.W.2d at 728 (holding an error in taxing costs by the clerk may be corrected by the court upon motion of the injured party even after the case has been finally disposed of on appeal unless the right to retax costs has been lost in some man-

ner).[10]

While a motion to retax costs may be an available remedy, I disagree that individual motions to retax filed by each Appellee and others similarly situated in the various family district courts constitute an *adequate* legal remedy here. *See Repka v. Am. Nat'l Ins. Co.*, 143 Tex. 542, 547, 186 S.W.2d 977, 980 (1945) (noting fact that complainant may have a remedy at law is not conclusive that such remedy is adequate and does not foreclose his right to equitable relief). As the district clerk acknowledges in his brief, for a remedy to be "adequate," it must be one that is complete, practical, and efficient to the prompt administration of justice as is equitable relief.

The number of individual motions to retax in each court for these and other similarly situated indigent litigants from whom the district clerk plans to extract costs could add up to thousands of such motions that would overwhelm the family law courts as well as the overworked and understaffed legal aid offices and volunteer pro bono attorneys. As previously noted, statistics published by OCA for Tarrant County show over 4,000 petitioners in family law cases who were pro se in the fiscal year ending August 31, 2013,[11] with similar numbers for at least the two prior years,[12] totaling more than twelve thousand potential motions to retax costs for those years alone that could conceivably be filed by pro se litigants who are indigent, and that number does not include indigent petitioners represented by legal aid or pro bono lawyers.

A party can restrain the unlawful act of a public official when the act would cause irreparable injury or when that remedy is necessary to prevent a multiplicity of suits. *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 162 Tex. 1, 5, 343 S.W.2d 242, 245 (1961); *Dallas Cnty. v. Sweitzer*, 881 S.W.2d 757, 769 (Tex.App.-Dallas 1994, writ denied) (op. on reh'g) (holding injunction proper against district clerk of Dallas County to prevent collection of various fees not authorized by law); *Garcia v. Angelini*, 412 S.W.2d 949, 951 (Tex.Civ. App.-Eastland 1967, no writ). The district clerk's proposal for filing individual motions to retax costs in each of these and other similar cases would undoubtedly create a multitude of proceedings.

It is firmly established that equity will assume jurisdiction for the purpose of preventing a multiplicity of suits, the principle being that the necessity of a multiplicity of suits in itself constitutes the inadequacy of a remedy at law, which confers equitable jurisdiction. *Repka*, 143 Tex. at 546, 186 S.W.2d at 979. In *Repka*, the court further stated, as particularly pertinent to this case:

> It would be a paradox to say that equity jurisdiction can be exercised to prevent a multiplicity of suits and at the same

---

10. The district clerk acknowledges that there is "no impediment" to each party filing a motion to retax costs in the court that rendered their divorce judgments because the timeliness of a motion to retax costs is linked to the time a demand is made for payment of costs, which he concedes was well after the divorce decrees were rendered and became final and plenary power had expired as to each of these Appellees.

11. Office of Court Administration, *supra* note 8.

12. Office of Court Administration, *District Courts, Summary of Other Civil and Family Case Activity, September 1, 2011 to August 31, 2012*, at 7 http://www.courts.state.tx.us/pubs/ AR2012/dc/10–OtherCivilAndFamilyActivity ByCounty.pdf (last visited Mar. 27, 2014); Office of Court Administration, *District Courts, Summary of Other Civil and Family Case Activity, September 1, 2010 to August 31, 2011*, at 7 http://www.courts.state.tx.us/pubs/AR2011/ dc/10–OtherCivilAndFamilyActivityByCounty. pdf (last visited Mar. 27, 2014).

time say that a legal remedy is complete and adequate, although it leads to such multiplicity. To our minds, if a remedy at law, though otherwise complete and adequate, leads to a multiplicity of suits, that very fact prevents it from being complete and adequate.

*Id.* at 547–48, 186 S.W.2d at 980 (quoting *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 395, 110 S.W.2d 891, 896 (1937)).

This would apply to motions to retax as to these seven Appellees as well as to hundreds, if not thousands, of other similarly situated litigants. And as to Appellees' standing to maintain this consolidated suit on behalf of "others similarly situated," I agree with Appellees that they have standing to temporarily restrain the allegedly unauthorized action of the district clerk in systematically carrying out a policy and practice that he proposes to direct against all indigent petitioners who have filed uncontested affidavits of indigence, and that this remedy, due to the nature of the wrong to be addressed, will necessarily inure to the benefit of all similarly situated litigants by restraining his action, rather than forcing them to file motions and imposing that burden on the family courts' dockets.

In *Sweitzer*, the trial court granted an injunction against the district clerk of Dallas County in a suit challenging the legality of various types of fees that he had charged to the plaintiffs that they believed were not authorized by law. 881 S.W.2d at 761. Significantly, the plaintiffs sought the injunction on behalf of all litigants in Dallas County who paid similar fees, as well as for themselves. *Id.* at 769. The appellate court upheld the injunction, holding that "[a] party suing for all persons adversely affected by enforcement of a statute has standing to sue for an injunction" and that this claim gave plaintiff a "sufficient justiciable interest to maintain an action to enjoin the County from collecting fees not authorized by law." *Id.* I would hold that, under *Sweitzer*, Appellees have standing and a justiciable interest to maintain this suit and to enjoin the district clerk from taxing and collecting costs not authorized by law.

I would affirm the temporary injunction on behalf of Appellees and all persons similarly situated with respect to the district clerk's policy and practice. I would hold that the 17th District Court has jurisdiction over Appellees' suit; that Appellees have standing and a justiciable interest in maintaining their action for themselves and all persons similarly affected; and that Appellees have demonstrated a probable right to recover and probable irreparable harm, with no adequate remedy at law. Because the majority does not so hold, I respectfully dissent.