# IN THE SUPREME COURT OF TEXAS

══════════
No. 14-0379
══════════

ODELL CAMPBELL, SHAWNTA RENEA COLEMAN, THOMAS RAY ROBERTSON,
DIANA J. NAJERA, SCOTT WIERNIK, TAIRHONDA MCAFEE AND
MARYBETH LYNN JEWELL, PETITIONERS,

v.

THOMAS A. WILDER, TARRANT COUNTY DISTRICT CLERK, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued September 23, 2015**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE LEHRMANN did not participate in the decision.

The trial court temporarily enjoined the District Clerk of Tarrant County from billing court costs to parties who had filed uncontested affidavits of indigency. A divided court of appeals vacated the injunction and dismissed the case because the trial court had not rendered the judgments in the cases in which costs were billed.[1] We consider whether the trial court had jurisdiction over a challenge to the District Clerk's exercise of his ministerial duties, and if so, whether injunctive relief

---

[1] 430 S.W.3d 474 (Tex. App.—Fort Worth 2014).

is appropriate. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

## I

Petitioners are six individuals[2] who sued for divorce in Tarrant County between 2008 and 2012. Like thousands of other parties to divorce cases in the family district courts of Tarrant County during that period, Petitioners each filed an uncontested affidavit of indigency in lieu of paying costs as permitted by Rule 145 of the Texas Rules of Civil Procedure. Petitioners' final divorce decrees nevertheless allocated costs, providing either that "costs of Court are to be borne by the party who incurred them" or that "Husband will pay for his court costs [and] the Wife will pay for her court costs." The decrees did not state the amount of costs due or that Petitioners were able to afford them.

Between May and August 2012, each of the Petitioners received collection notices from Respondent, the District Clerk of Tarrant County, demanding from each, on average, about $300 in court costs and fees. The notices threatened that the sheriff would seize property to satisfy the debt. Petitioners were understandably upset and frightened by the notices. When the Texas Advocacy Project protested on behalf of some of the Petitioners, the District Clerk responded that he was bound by the decrees allocating costs to the party who incurred them. He encouraged any party wishing not to pay costs to return to the family court that rendered the divorce decree to have costs retaxed.

---

[2] Petitioners are Odell Campbell, Shawnta Renea Coleman, Thomas Ray Robertson, Scott Wiernik, Tairhonda McAfee, and Marybeth Lynn Jewell.

2

Petitioners sued for mandamus, injunctive, and declaratory relief in a civil district court that had not rendered any of their divorce decrees. After an evidentiary hearing, the court found that the District Clerk

> has a policy, practice, and procedure that his office will seek to collect costs against parties who have filed an affidavit on indigency under Tex. R. Civ. P. 145 where the affidavit was not contested, where the contest was denied, or where the contest was withdrawn based on judgments or final orders in which there was no specific finding expressly stated in the judgment or final order that the indigent party's action resulted in a monetary award, and no specific finding expressly stated in the judgment or final order that there was sufficient monetary award to reimburse costs[.]

The court temporarily enjoined the District Clerk from "continuing his policy of collection of court costs from indigent parties who have filed an affidavit on indigency".

The District Clerk appealed, contending that Section 65.023(b) of the Texas Civil Practice and Remedies Code deprived the civil district court of jurisdiction, and alternatively, that injunctive relief was improper because Petitioners have an adequate remedy at law. A divided court of appeals vacated the injunction and dismissed the case for want of jurisdiction.[3] We granted Petitioners' petition for review.[4]

## II

We first consider the applicability of Section 65.023(b) to this case.

---

[3] 430 S.W.3d 474 (Tex. App.—Fort Worth 2014).

[4] 58 Tex. Sup. Ct. J. 1203 (June 19, 2015). We have jurisdiction over this interlocutory appeal because of the dissent in the court of appeals. TEX. GOV'T CODE §§ 22.001(a)(1), 22.225(c).

**A**

Section 65.023(b) provides that "[a] writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered."[5] This statutory provision dates to 1846.[6]

We interpreted the 1911 version[7] in a 1923 case, *Carey v. Looney*.[8] There, a district court in McLennan County rendered a personal money judgment for Looney and awarded him an order of sale to be executed on a piece of land in Milam County to satisfy the judgment.[9] Carey, who was not a party to the judgment and claimed to own the land, sued in a district court in Milam County for an injunction prohibiting Looney and the sheriff from executing the order of sale and writ of possession, and from disturbing her and her tenants' lawful possession.[10] The court dismissed the action for want of jurisdiction on the ground that the statute required the action to be brought in the court in McLennan County.[11] We disagreed.

---

[5] TEX. CIV. PRAC. & REM. CODE § 65.023(b).

[6] Act approved May 13, 1846, 1st Leg., R.S., § 152, 1846 Tex. Gen. Laws 363, 406–407, *reprinted in* 2 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1669, 1711–1712 (Austin, Gammel Book Co. 1898) ("writs of injunction . . . to stay . . . execution on a judgment[] shall be returnable to and tried in the district court of the county where . . . the judgment was rendered"). The provision was previously codified as TEX. REV. CIV. STAT. art. 2880 (1879), TEX. REV. CIV. STAT. art. 2996 (1895), TEX. REV. CIV. STAT. art. 4653 (1911), and TEX. REV. CIV. STAT. art. 4656 (1925).

[7] TEX. REV. CIV. STAT. art. 4653 (1911) ("Writs of injunction granted to stay . . . execution on a judgment[] shall be returnable to and tried in the court where . . . such judgment was rendered . . . .").

[8] 251 S.W. 1040 (Tex. 1923).

[9] *Id.* at 1040.

[10] *Id.* at 1041.

[11] *Id.*

4

The purposes of the statute, we said, are "to protect the judgments and processes of one court from interference by another by direct attack" and to "prevent[] a defeated party from proceeding from one court to another, after his defeat, or in the hope of avoiding defeat, in an attempt to relitigate the case."[12] The Milam County court's exercise of jurisdiction offended neither. We then described the statute's applicability as follows:

> The test of jurisdiction in such cases[13] is whether the relief sought may be granted independently of the judgment or its mandate sought to be enjoined. If, in order to grant the relief, it is necessary to set aside or modify the judgment, or to regulate the processes issued thereunder, and the attack is made by a party to the judgment, the statue is mandatory and requires that the injunction suit be returnable to and tried in the court rendering the judgment. On the other hand, if the court in which the injunction suit is brought has general jurisdiction over the subject-matter, and the relief may be granted, independently of the matters adjudicated in the suit whose judgment or processes thereunder are sought to be restrained, the statute has no application.[14]

The District Clerk here looks past the test set out in the first sentence and argues that the applicability of what is now Section 65.023(b) depends on whether a case is in the category defined by the second sentence in the quoted passage, to which the statute applies, or the category defined by the third sentence, to which the statute does not apply. Because a bill of costs is a process issued under a judgment, and each of the Petitioners was a party to his or her own divorce decree, the District Clerk contends that Petitioners' claims for injunctive relief fall in the former category.

---

[12] *Id.* (quotation marks omitted).

[13] Though Section 65.023 is captioned "Place for Trial", TEX. CIV. PRAC. & REM. CODE § 65.023, suggesting that it is a venue provision, in a former codification the statute was captioned "Jurisdiction for trial", TEX. REV. CIV. STAT. art. 4656 (1925), suggesting that the limitation is one on jurisdiction, and we referred to it as such in *Carey*. The parties here treat the statute as jurisdictional, so we will assume it is, without deciding the matter.

[14] *Carey,* 251 S.W. at 1041 (citations omitted).

5

The District Clerk's argument misreads *Carey*. Carey's case fell outside the statute's applicability because the relief Carey sought was independent of the matters adjudicated by the judgment in McLennan County. That court had not adjudicated Carey's claims; she was not a party. But the court did adjudicate whether the interests of the defendants before it should be sold; indeed, the court issued an order of sale.[15] Carey's suit to stop the execution process issued to enforce Looney's judgment would have been governed by the statute but for the fact that she was not a party to Looney's case. If the statute merely prohibited *a party* to a judgment from asking another court to enjoin its enforcement, it would have been much easier to draw the line there, having noted that a purpose of the statute is to prevent a party from forum-shopping. But another purpose, we said, is to prevent one court from directly attacking another's judgment. "*The* test" is whether relief can be granted independently of the judgment. What followed were merely examples.

We made clear later in the opinion that the applicability of what is now Section 65.023(b) does not turn on whether the applicant for injunctive relief is a party to the judgment from which his or her complaint arises.

> Where specific property has been levied upon under a general execution, the levy and sale may be enjoined in another court, even by a party to the suit. The ground of such holding is that the injunction of a sale of specific property, on the claim that it is not subject to the levy, is not a stay or interference with the processes of another court. . . . On the other hand, where the judgment itself orders the sale of specific property, such sale cannot be restrained by another court upon the application of a party to the judgment.[16]

---

[15] *Id.* at 1042.

[16] *Id.* at 1041–1042.

6

The applicability of the statute depends on whether injunctive relief can be granted independently of the judgment, not on whether the applicant for injunctive relief was a party to the judgment, or on whether an injunction will disturb process issuing as a result of that judgment.

In other words, under *Carey*, the fact that the injunction may disturb process issuing as a result of the judgment is but one example of when a court could be unable to grant relief independently of the judgment. But that does not mean that an injunction that disturbs process can never be granted independently of the judgment. Even if a plaintiff seeks an injunction that will regulate the processes issued under a judgment, courts must still consider whether, under the specific circumstances of each case, the injunction may nevertheless be issued independently of the judgment.

The District Clerk's misinterpretation of the statute finds some support in our 1982 per curiam opinion in *Evans v. Pringle*.[17] In that case, a criminal district court forfeited two bail bonds, and the sureties paid the face amounts. But the district attorney claimed that post-judgment interest was also due and obtained writs of execution to collect it.[18] The sureties, who were not parties to the criminal court judgment, asserted that forfeited bonds do not bear post-judgment interest and obtained an injunction from a civil district court prohibiting the sheriff from seizing property to enforce the writs.[19] We found that Section 65.023(b) applied because "in order to grant the relief, it

---

[17] 643 S.W.2d 116 (Tex. 1982) (per curiam).

[18] *Id.* at 117.

[19] *Id.*

is necessary to regulate the processes issued under the judgment."[20] We did not discuss whether the relief the sureties sought could be granted independently of the matters adjudicated in the criminal case, but the effect of our decision is that it cannot be. We have not revisited the issue since then. Now in retrospect, we cannot square *Evans* with a proper interpretation of *Carey*. If Carey was not required to litigate the propriety of execution on land she claimed in the court that issued the execution, we cannot see why the sureties in *Evans* should have been required to return to the court that issued the processes giving rise to their objections to post-judgment interest. *Carey* correctly interpreted what is now Section 65.023(b), and *Evans* did not. *Evans* must therefore be overruled.

**B**

Both parties agree that the District Clerk has a ministerial duty to bill costs as required by a judgment. The District Clerk argues that Petitioners' divorce decrees require them to pay costs. But the decrees only allocate costs between the parties to each case, requiring each party to bear his or her own costs—whatever they are. For a party who files an affidavit of inability to pay costs, there are no costs to bill; under Rule 145 of the Texas Rules of Civil Procedure, the affidavit is "[i]n lieu of paying or giving security for costs".[21] The Petitioners here all had uncontested affidavits; those affidavits are "in lieu of" paying costs. There are no costs.[22]

---

[20] *Id.* at 118.

[21] TEX. R. CIV. P. 145(a).

[22] The costs of course do not disappear. But from the perspective of the petitioner, the affidavit substitutes for any costs.

"An uncontested affidavit of inability to pay is conclusive as a matter of law."[23] The only exception lies when "the party's action results in monetary award, and the court finds sufficient monetary award to reimburse costs".[24] Without a finding by the court, the affidavit wholly supplants any costs.[25]

The District Clerk argues that because the Family Code provides courts with increased latitude to award costs, it is conceivable that a family court could order costs despite an affidavit of inability to pay.[26] This argument flies in the face of our Constitution and case law. Rule 145 is but one manifestation of the open courts guarantee that "every person . . . shall have remedy by due course of law."[27] It is an abuse of discretion for any judge, including a family law judge, to order costs in spite of an uncontested affidavit of indigence.[28]

---

[23] *Equitable Gen. Ins. Co. of Tex. v. Yates*, 684 S.W.2d 669, 671 (Tex. 1984).

[24] TEX. R. CIV. P. 145(d).

[25] Rule 145 does not explicitly require the finding to be in writing. But considering our priority to keep the courts open for indigent litigants, it is not unreasonable to expect a trial court to make a written finding that the affidavit of indigency is overcome by the outcome of the action. Rule 145 does provide that if the court chooses to grant a challenge to an affidavit of indigency it must do so in a written order. *Id.*

[26] *See* TEX. FAM. CODE §§ 6.708, 106.001.

[27] TEX. CONST. art. I, § 13.

[28] *See In re Villanueva*, 292 S.W.3d 236, 246 (Tex. App.—Texarkana 2009, orig. proceeding) (concluding that family court abused its discretion when it ordered indigent divorce litigant to pay costs despite uncontested affidavit of indigency).

In any case, the family courts here did not order costs. The language in the judgment merely lays out the division of any costs, not an amount to be charged.[29] It is the ministerial duty of the District Clerk to tabulate the costs and apply the affidavit of indigency.[30]

Petitioners complain that they were billed costs they did not incur. They challenge the District Clerk's actions and his policy; they do not challenge a word of the judgments in their cases. Section 65.023 therefore does not apply, and the district court had jurisdiction to enter the injunction.

### III

Having established that the district court had jurisdiction over the petitions, we now turn to the issue of whether a temporary injunction was proper.

### A

First, the District Clerk argues that because Petitioners could have filed a motion to retax costs, they have an adequate remedy at law.

Generally, the existence of an adequate remedy at law will bar equitable relief.[31] However, if an otherwise complete and adequate remedy at law will lead to a multiplicity of suits, "that very

---

[29] *See Wood v. Wood*, 320 S.W.2d 807, 812–813 (Tex. 1959) ("The province of the court is to adjudge all the costs, whatever they may be, against the losing party, or for good cause shown to adjudge otherwise. . . . The taxing of costs is not an adjudication by the court of the correctness of the items taxed by the clerk. It is the ministerial act of the clerk.").

[30] *See id.* at 813. The process in the District Clerk's own office supports this view. At least one litigant received a receipt from the District Clerk's office that the total due—$308—had been "[r]eceived" and "[c]harged to PAUPER'S AFFIDAVIT".

[31] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002).

fact prevents it from being complete and adequate."[32] "[T]he unlawful acts of public officials" are a prime candidate for injunctions "when [those acts] would cause irreparable injury or when such remedy is necessary to prevent a multiplicity of suits."[33]

A motion to retax costs confronts the correctness of the clerk's ministerial calculations.[34] It is the proper method for correcting errors such as miscalculating the cost of an item[35] or billing an item that is not statutorily taxable.[36] These are fact-specific errors made in individual cases that require a similarly individual approach to redress.

Petitioners are not complaining of a one-off miscalculation or mistake, but of a systematic policy that contravenes the law. It would be wasteful to force each individual Petitioner to file a motion to retax costs when a single injunction will do.[37]

## B

The District Clerk also argues that the injunction is overbroad. The district court enjoined the District Clerk from "continuing his policy of collection of court costs from indigent

---

[32] *Repka v. Am. Nat. Ins. Co.*, 186 S.W.2d 977, 980 (Tex. 1945) (quoting *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 896 (Tex. 1937)).

[33] *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 343 S.W.2d 242, 245 (Tex. 1961).

[34] *Reaugh v. McCollum Expl. Co.*, 167 S.W.2d 727, 728 (Tex. 1943).

[35] *Id.* at 727–728.

[36] *See Wright v. Pino*, 163 S.W.3d 259, 261 (Tex. App.—Fort Worth 2005, no pet.) (determining that complaint that taxed items were not authorized as costs is not an abuse of the court's discretion but the ministerial duty of the clerk and should be brought in a motion to retax costs).

[37] We have previously upheld an injunction enjoining a clerk from collecting statutory filing fees that we determined were unconstitutional. *See LeCroy v. Hanlon*, 713 S.W.2d 335, 343 (Tex. 1986). Whether a motion to retax would have been an adequate remedy in that case was not discussed, but likely it would not have been. As here, the error by the clerk was not a one-off mistake but a policy (supported in that case by statute) that contradicted the law.

11

parties . . . unless [the court makes a specific finding in accordance with Rule 145(d)]." The District Clerk is not just enjoined from billing costs to the named parties, but to all litigants who qualify as indigent.

An injunction must be broad enough to "prevent repetition of the evil sought to be stopped"[38]—here, the District Clerk's "policy, practice, and procedure" of seeking costs against indigent litigants, as found by the district court. When a policy or procedure is challenged as being in conflict with state law, any injunction that issues will necessarily affect individuals beyond the named parties. For example, we affirmed an injunction that restrained a state agency from disciplining *any* employee who refused to take a polygraph test, despite the fact that only a few individuals and the state union raised the constitutional challenge to the polygraph policy.[39] We also reversed the dissolution of an injunction preventing a fire department from implementing a firefighter fitness assessment that conflicted with state law, even though only a few firefighters brought the action.[40]

Similarly, the district court found that "because of the nature of this action, a final judgment in this case will affect all persons who are in a position similar to these Petitioners." The injunction order tracks the language of Rule 145 and requires the District Clerk to conform his actions to the law. It does not restrain the District Clerk from any lawful activity, and therefore is not overbroad.

---

[38] *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956).

[39] *Tex. State Emps. Union v. Tex. Dep't. of Mental Health & Mental Retardation*, 746 S.W.2d 203, 206 (Tex. 1987).

[40] *Tyra v. City of Houston*, 822 S.W.2d 626, 628 (Tex. 1991). *See also Dallas Cty. v. Sweitzer*, 881 S.W.2d 757, 769 (Tex. App.—Dallas 1994, writ denied) ("A party suing for all persons adversely affected by enforcement of a statute has standing to sue for an injunction.").

At oral argument, there was a brief discussion of whether mandamus might be a more appropriate remedy than an injunction. "There is a well defined difference between injunction and mandamus. One is preventive and the other remedial."[41] When the purpose of the suit is to compel action, then mandamus is proper; conversely, when the purpose is to restrain action or threatened action, then an injunction is proper.[42] The two remedies can work in conjunction with each other. For example, a court can issue mandamus to order a clerk to file a petition that the clerk wrongly rejected, and concurrently issue an injunction barring the clerk from collecting an unconstitutional filing fee.[43] The mandamus compels the clerk to act; the injunction prevents the clerk from acting.

Here, the purpose of the suit was to prevent the District Clerk from billing costs to indigent litigants. To the extent that the District Clerk has already billed costs and must now take some action to rescind the bills, mandamus would be proper. But the true relief lies in enjoining the District Clerk from continuing his policy of collecting these costs from these Petitioners or others similarly situated.[44] The temporary injunction is proper.

*  *  *  *  *

---

[41] *Boston v. Garrison*, 256 S.W.2d 67, 70 (Tex. 1953).

[42] *Id.*

[43] *LeCroy*, 713 S.W.2d at 336–337.

[44] Before the court of appeals, the District Clerk argued that Petitioners were attempting to receive class action relief without certifying a class. This argument is not before us, but we note that Petitioners claimed they were amending their pleading to seek class certification and that there is no requirement that a class be certified before obtaining a temporary injunction. *See* TEX. R. CIV. P. 42(c)(1)(A) (requiring the court to determine certification "at an early practicable time").

We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: April 1, 2016