# Court of Appeals
## Tenth Appellate District of Texas

---

10-25-00265-CV

---

Richard Mark Dudley and Deanie Palmer Dudley,
Appellants

v.

Texas Municipal Power Agency,
Appellee

---

On appeal from the
272nd District Court of Brazos County, Texas
Judge John L. Brick, presiding
Trial Court Cause No. 18-001737-CV-272

---

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Richard Mark Dudley and Deanie Palmer Dudley appeal from the trial court's adverse judgment in this declaratory judgment action brought by Texas Municipal Power Agency (TMPA).[1]  Appellants raise ten issues attacking the declarations and injunctions in the judgment, as well as the award of attorneys'

---

[1] Pursuant to Subchapter C, Chapter 163 of the Texas Utilities Code, the cities of Bryan, Denton, Garland, and Greenville created a municipal power agency known as the Texas Municipal Power Agency.  *See* TEX. UTIL. CODE ANN. §§ 163.051-.068.

fees. We modify the trial court's judgment to vacate the $110,281.25 award of attorneys' fees for the associate attorneys and paralegals and, as modified, affirm the remainder of the judgment.

## BACKGROUND

In 1986, Appellants purchased property in Brazos County, Texas which is subject to a 1979 Easement granted to TMPA for electric power and communication lines. Pursuant to the Easement, TMPA has the right to access the property to maintain its lines. Appellants have the right to use the property but may not interfere with the exercise of TMPA's rights. Over the course of several years, Appellants placed a propane tank, a swing set, and other playground equipment in the Easement area, installed landscaping, including an oak tree, in the Easement area, and built a four-foot-tall retaining wall that extends into the Easement area. TMPA considered these items to be obstructions that were not allowed under the terms of the Easement. In June 2017, TMPA notified Appellants and asked them to remove the obstructions. Discussions between the parties did not lead to a resolution of the issue.

In 2018, TMPA filed suit against Appellants because they installed "various structures and other obstructions" within the Easement area. TMPA alleged a breach of contract cause of action and sought a declaration clarifying

the rights of the parties pursuant to the Easement, as well as injunctive relief. TMPA later nonsuited the breach of contract claim.

On August 21, 2018, Appellants filed their answer asserting numerous affirmative defenses and a counterclaim for declaratory and injunctive relief. On July 26, 2019, TMPA filed its first combined traditional and no evidence motions for partial summary judgment requesting four specified declarations and a permanent injunction and asserting that Appellants' counterclaim and affirmative defenses fail as a matter of law. On September 3, 2019, Appellants filed an amended counterclaim for additional declarations, wrongful injunction, trespass, breach of contract, and easement abuse. They again sought injunctive relief.

On September 9, 2019, the trial court granted TMPA's first traditional and no evidence motions for partial summary judgment. On March 2, 2020, TMPA filed its second combined traditional and no evidence motions for partial summary judgment addressing the causes of action alleged in Appellants' amended counterclaim and asserting entitlement to judgment as a matter of law. The trial court granted these motions on April 7, 2020.

A trial before the court was held on July 1, 2021, solely on the issue of attorneys' fees. The court later invited briefing by the parties on the issue of reasonableness. There are no entries in the clerk's record between November

30, 2021 and January 9, 2023, at which time counsel for TMPA requested a setting for a status conference. The final judgment was finally signed on September 30, 2023. The final judgment 1) incorporated verbatim the declaratory and injunctive relief requested in TMPA's first combined traditional and no evidence motions for partial summary judgment and awarded in the September 9, 2019 summary judgment; 2) ordered that Appellants take nothing on their claims and causes of action as reflected in the court's April 7, 2020 summary judgment; and 3) awarded TMPA attorneys' fees in the amount of $223,556.25 as well as conditional fees if the case is appealed. The trial court also signed findings of fact and conclusions of law in support of the judgment. This appeal ensued.

## DECLARATORY RELIEF

In their first issue, Appellants contend the trial court erred by awarding declaratory relief because those declarations conflict with the express language of the Easement. They argue that the trial court rewrote the Easement in TMPA's favor. They complain that the declarations 1) delete the limitation that TMPA can trim or cut down trees only to the extent necessary to prevent possible interference with the operation of any of the lines or to remove possible hazards to the lines; 2) prohibit Appellants from building anything on the easement property; 3) ignore Appellants' right to build fencing; and 4)

impermissibly give TMPA the right, in its sole judgment, to remove the existing retaining wall.

**Standard of Review**

The purpose of a declaratory judgment action is to establish the existing rights, status, or other legal relationships between the parties. TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b); *Wright v. Jones*, 674 S.W.3d 704, 709 (Tex. App.—Waco 2023, no pet.). Declaratory judgments are reviewed under the same standards as other judgments and decrees. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010. We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Wright*, 674 S.W.3d at 709.

We review the trial court's decision to grant summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(h)(2); *Eagle Oil & Gas Co.*, 619 S.W.3d at 705. Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence sufficient to raise a genuine issue of material fact, thereby precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most

favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017).

**Applicable Law**

An easement is a nonpossessory property interest authorizing its holder to use another's property for particular purposes. *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018). The servient estate holder, that is, the owner of the underlying fee, cannot interfere with the dominant estate holder's use of an easement for the easement's purposes. *Target Corp. v. D&H Props., LLC*, 637 S.W.3d 816, 829 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). Thus, any use by the servient estate holder that interferes with the exercise of the dominant estate holder's rights must yield. *Id.*

When construing an easement, "courts deploy the rules of contract interpretation and look to the easement's express terms to determine its scope." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020). Courts look to the entirety of the easement and "harmonize its terms to give effect to all of the provisions." *Id.* The language in an easement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent. *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). If the easement's

terms can be given a definite or certain meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law. *Id*. at 100.

**Discussion**

The easement granted to TMPA provides in pertinent part, that the

> easement and right of way shall include the right of ingress and egress over and upon said land for the purpose of constructing, operating, . . . repairing, . . . maintaining and removing such electric power and communication lines, . . . the right to trim and cut down trees and shrubbery to the extent, in the sole judgment of the Agency necessary to prevent possible interference with the operation of any of said lines or to remove possible hazards thereto, and the right to remove or prevent the construction on said land of any or all buildings, structures and obstructions. If any such buildings, structures or obstructions are constructed or permitted by grantor to exist on said land without prior written consent of Agency then the Agency shall have the right to remove same from such land and Grantor agrees to pay to Agency the reasonable cost of such removal . . . .
>
> Grantor reserves the right to use said land for general agricultural and grazing purposes, provided such use shall not include the growing of trees thereon or any other use that might, in the sole judgment of Agency, interfere with the exercise by the Agency of the rights hereby granted. . . . Grantor also reserves the right to erect fences not more than 8 feet high across and upon said land provided all such fences shall have gates, openings or removable sections at least 10 feet wide which will permit Agency reasonable access to all parts of said land.

The trial court ordered declaratory relief as follows:

> The Dudleys were not entitled to place or construct and are not entitled to maintain the Obstructions within the Easement Area without TMPA's consent;
>
> The Easement vested TMPA with the right of ingress and egress over, across, and upon the Easement Area for the purposes, among others, of (i) trimming and cutting down trees and shrubbery within or extending into the Easement Area and (ii) removing the Obstructions;
>
> The Dudleys were not entitled to place or construct and are not entitled to maintain the retaining wall within the Easement Area without TMPA's consent; and
>
> If at any time in the future TMPA, in its sole judgment, determines that the retaining wall interferes with the exercise of its rights in and to the Easement Area, TMPA is entitled to remove the retaining wall.

1) <u>Did the trial court delete a limitation regarding TMPA's right to trim and cut trees?</u>

The Easement grants TMPA the right of ingress and egress and the right to trim and cut trees and shrubbery to the extent, in its sole judgment, TMPA deems necessary to prevent interference with the operation of the lines or to remove possible hazards. Because the trial court's declaration did not include a requirement that TMPA trim and cut trees and shrubbery only to the extent

necessary, Appellants contend the declaration results in a removal of a limitation to TMPA's Easement rights.

As evidence supporting its motion for summary judgment, TMPA attached the transcript of testimony taken at the November 15, 2018 hearing on TMPA's request for a temporary injunction. Ross Owen, transmission and distribution director for Garland Power and Light, testified that, since 2013, Garland performs transmission operation, maintenance, and construction for TMPA. He explained that trees and landscaping in the Easement area are a problem because Garland does not have full access to its right-of-way to get vehicles, including very large trucks, up and down the line throughout the right-of-way. Additionally, he testified that Garland is regulated by the North American Electric Reliability Corporation, a governing body that audits how it maintains its right-of-ways, among other things. Garland is required to have a vegetation management plan. Maintenance of the right-of-way is important for reliability of the line and the ability to efficiently maintain the line. Furthermore, trees can present a safety risk because they can catch on fire.

The Easement gives TMPA the right to maintain the lines as it may find necessary and the right to trim and cut down trees and shrubbery to the extent, in its sole judgment, it deems necessary to prevent interference with the operation of the lines or to remove hazards. The Easement also provides that

Appellants cannot use the land in any way that interferes with TMPA's rights, including growing vegetation. Under the plain language of the Easement, what to cut has always been in TMPA's sole discretion. Construing the Easement in its entirety, the wording of the declaration does not exclude a limitation or increase TMPA's rights. *See Lynch*, 595 S.W.3d at 686.

2) <u>Does the declaration prohibit Appellants from building anything on the easement property?</u>

The Easement grants TMPA "the right to remove or prevent the construction on [the easement property] of any or all buildings, structures and obstructions." Further, if any buildings, structures, or obstructions are constructed without TMPA's prior written consent, TMPA has the right to remove them. The trial court's declaration provides that Appellants are not entitled to place or construct, and are not intitled to maintain, obstructions within the Easement area without TMPA's consent. The trial court also declared that TMPA has the right of ingress and egress for the purpose of removing obstructions. Appellants assert the trial court created a blanket prohibition against building in the Easement area.

Ross Owen testified that objects in the right-of-way block Garland's trucks and pose a safety hazard due to the possibility of downed power lines. His testimony explains the need for TMPA to have the right to remove all

obstructions on the Easement property. The Easement specifically gives TMPA the right to "prevent the construction on said land of any or all buildings, structures and obstructions." Also, TMPA has the right to remove obstructions Appellants construct on the Easement property when Appellants fail to obtain prior written consent. Giving the words of the Easement their plain meaning, Appellants are not entitled to construct or maintain buildings, structures, or obstructions within the Easement area. We conclude the trial court did not create a blanket prohibition against building in the Easement area but merely interpreted the Easement. *See id*.; *Parks*, 1 S.W.3d at 101.

3) Does the declaration ignore Appellants' right to build fencing?

The Easement provides that Appellants reserve the right to erect fences not more than eight feet high across and upon the Easement property provided all such fences shall have gates, openings, or removable sections at least ten feet wide which will permit TMPA reasonable access to all parts of the Easement property. The declaration does not mention fences at all. The declaration provides that Appellants were not entitled to construct the retaining wall within the Easement area without TMPA's consent and TMPA is entitled to remove the retaining wall. Appellants assert this declaration misinterprets and rewrites the parties' rights relating to the retaining wall.

Appellants contend their retaining wall, a portion of which lies in the Easement area, is a "masonry fence" allowed by the Easement and that it does not block TMPA's access to the Easement property. The summary judgment evidence shows that Richard Dudley built the retaining wall in conjunction with a berm to control drainage. Installation of the retaining wall resulted in different elevations within the Easement area. He knew at the time he built the wall that a portion of it lies within the Easement property. At the hearing on the temporary injunction, Richard Dudley testified that, due to the retaining wall, a TMPA truck cannot pull into his driveway and go beyond the retaining wall into the Easement area. There is no gate in the retaining wall, and it is not built in a manner to allow sections to be removed.

The term "fence" is defined as a barrier intended to prevent escape or intrusion or to mark a boundary, especially such a barrier made of posts and wire or boards. *Fence*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/fence. A "retaining wall" is a wall that is built to keep the land behind it from sliding. *Retaining wall*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/retaining%20wall. We disagree with Appellants' argument that the retaining wall can be considered a fence and therefore allowed by the terms of the Easement. *See Melder v. Phillips Pipe Line Co.*, 539 S.W.2d 208, 211 (Tex. App.—Austin 1976,

writ ref'd n.r.e.) (held that low rock wall erected to prevent soil erosion, referred to as retaining wall, is not considered to be a fence).  The provision of the Easement allowing Appellants the right to build fences does not include the right to build retaining walls without TMPA's permission.  The trial court's declaration that Appellants were not entitled to construct, and are not entitled to maintain, the retaining wall without TMPA's consent does not concern Appellants' right to build fences in the Easement area.  This declaration applies the plain grammatical meaning of the terms of the Easement.  *See Parks*, 1 S.W.3d at 101.

4) <u>Does the declaration impermissibly give TMPA the right, in its sole judgment, to remove the existing retaining wall?</u>

The Easement explicitly gives TMPA the right to remove or prevent the construction of any or all buildings, structures, and obstructions in the Easement area.  Further, if any such buildings, structures, or obstructions are constructed or permitted by Appellants to exist in the Easement area without TMPA's prior written consent, the Easement gives TMPA the right to remove same from the Easement area.

The trial court declared that, in the future, TMPA may, in its sole discretion, remove the retaining wall if TMPA determines that it interferes with the exercise of TMPA's rights in and to the Easement area.  Appellants

contend this declaration rewrites the Easement by giving TMPA the right to make a determination in its sole judgment about whether the retaining wall interferes with the exercise of TMPA's rights in the Easement area.

The plain meaning of the term "structure" as used in the Easement includes the term "retaining wall." *See Parks*, 1 S.W.3d at 101. The Easement reserves the Appellants' right to use the land for certain specified uses but restricts them from "any other use that might, in the sole judgment of [TMPA], interfere with the exercise by [TMPA] of the rights hereby granted." Thus, the declaration accurately concluded that the Easement gives TMPA, in the absence of prior written consent, the right to remove the retaining wall. *See id.*

Summation

The trial court's declarations accurately interpreted the Easement to establish the existing rights between the parties. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b); *Lynch*, 595 S.W.3d at 686; *Wright*, 674 S.W.3d at 709. Accordingly, TMPA established its right to summary judgment on its declaratory judgment cause of action as a matter of law. *See Eagle Oil & Gas Co.*, 619 S.W.3d at 705. We overrule Appellants' first issue.

In their second issue, Appellants contend the trial court erred by granting the permanent injunctions contained in the judgment. They complain that 1) the judgment does not set forth the reasons for the issuance of the permanent injunctions; 2) the injunctions are vague and unclear; 3) the injunctions are overly broad; 4) TMPA did not show irreparable injury that justified the imposition of the permanent injunctions; and 5) the Easement itself contains an adequate legal remedy.

## Standard of Review

The grant of a permanent injunction is reviewed for abuse of discretion. *ORIX Capital Mkts., LLC v. La Villita Motor Inn, J.V.*, 329 S.W.3d 30, 44 (Tex. App.—San Antonio 2010, pet. denied). Generally, that discretion is abused and subject to reversal when the trial court misinterprets or misapplies the law or acts arbitrarily or unreasonably. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

When the permanent injunction is issued pursuant to the trial court's grant of a motion for summary judgment, we also apply the summary judgment standard of review. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848-49 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The movant for traditional summary judgment has the burden of showing there is

no genuine issue of material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(h)(2); *Eagle Oil & Gas Co.*, 619 S.W.3d at 705.

**Applicable Law**

An injunction is inherently forward-looking, intended to prohibit present or future conduct. *Luminant Energy Co. LLC v. Public Util. Comm'n of Tex.*, 665 S.W.3d 166, 181 (Tex. App.—Austin 2023), *rev'd on other grounds*, 691 S.W.3d 448 (Tex. 2024). To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law. *Pike v. Tex. EMC Mgt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020).

An injunction must be "in clear, specific and unambiguous terms" so that the party enjoined can understand the duties or obligations imposed by the injunction and so that the court can determine whether the injunction has been violated. *Ex part Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988) (orig. proceeding). Further, an injunction must be narrowly tailored to address the offending conduct; it must not be so broad that it would enjoin a defendant from acting within its lawful rights. *TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 212 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

**Discussion**

1) Reasons for Issuance

Because the trial court's judgment does not include a statement of the reasons for granting the injunctions, Appellants contend the trial court's judgment does not comply with Rule 683's requirement that every order granting an injunction set forth the reasons for its issuance. *See* TEX. R. CIV. P. 683. Although the rule does not specify, the "reasons for issuance" requirement of Rule 683 applies only to temporary or ancillary injunctions and does not apply to permanent injunctions. *Vaughn v. Drennon*, 202 S.W.3d 308, 321 (Tex. App.—Tyler 2006, no pet.).

2) Vague and Unclear

Appellants assert the injunctions are both vague and unclear. Specifically, Appellants contend the prohibition against "interfering with TMPA's exercise of its easement rights in the future" is too vague. They contend the injunction fails to provide adequate notice of the specific acts they are enjoined from performing in terms not subject to reasonable disagreement. They also assert the injunction against "constructing and/or placing new obstructions within the Easement Area without TMPA's written consent" fails to adequately inform them of the obstructions that they cannot construct or place.

TMPA's petition and the evidence identified specific obstructions within the Easement area including playground equipment, a swing set, a propane tank, a retaining wall, and landscaping. Among the rights granted to TMPA by the Easement is the right to remove or prevent the construction of any and all buildings, structures, and obstructions from the Easement area. TMPA's concerns centered around TMPA's ability to access the electrical lines within the Easement area to ensure the safe and reliable operation of the transmission line. The trial court declared that Appellants are not entitled to place or construct or maintain obstructions within the Easement area. The injunction permanently enjoined Appellants from "constructing and/or placing new obstructions within the Easement Area without TMPA's written consent."

Appellants point out that "obstructions" are not defined by the Easement. Accordingly, we apply the plain, ordinary, and generally accepted meaning of the term. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Black's Law Dictionary defines "obstruction" as "something that impedes or hinders . . .; an obstacle." *Obstruction*, BLACK'S LAW DICTIONARY (12th ed. 2024). The injunction's prohibition against constructing or placing new obstructions in the Easement area necessarily refers to any object that would inhibit TMPA's ability to construct, operate, improve, reconstruct, increase or reduce the line's capability, repair, relocate, inspect,

patrol, maintain, or remove the electric power and communication lines. In other words, Appellants cannot place anything in the Easement that would block TMPA's access. We conclude the language of the injunctions adequately identify the acts that are restrained and what obstructions are forbidden. The injunctions are therefore not vague and unclear.

3) Overly Broad

Appellants contend an injunction must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. *See Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948). They assert that the injunction, which enjoins them from constructing or placing new obstructions within the Easement area without TMPA's written consent, inappropriately forbids them from building anything in the Easement area although, they claim, the Easement does not include that prohibition.

The Easement gives TMPA the right to remove or *prevent* the construction of any or all buildings, structures, and obstacles. Further, the Easement provides that, if any such buildings, structures or obstructions are constructed or permitted by the landowner to exist in the Easement area without TMPA's written consent, then TMPA has the right to remove same from such land. Appellants are legally bound to comply with the terms of the Easement. *See Target Corp.*, 637 S.W.3d at 829. Based on the wording of the

Easement, the trial court did not enjoin Appellants from activities that are a lawful exercise of their legal rights. *See Parks*, 1 S.W.3d at 101.

Appellants also assert the injunction is overly broad because it gives TMPA the power to remove the retaining wall, if, in its sole judgment, TMPA determines that the retaining wall interferes with the exercise of its rights in and to the Easement property. Appellants argue that they "have the power to build fences under the Easement, so the 4-foot masonry fence complained about by TMPA was therefore a permissible fence under the Easement." As explained above, we disagree that the retaining wall is a "fence" as that term is used in the Easement.

Further, they contend the Easement does not give TMPA the power to make a determination in its sole judgment about whether any given fence meets the requirements of the Easement or whether something is an obstruction. The Easement provides that Appellants' right to use the Easement area is limited and they cannot use it for any use that might, in the sole judgment of TMPA interfere with TMPA's exercise of its rights. This includes placing a retaining wall in the Easement area to use it to control drainage. The Easement provides that if structures or obstructions are constructed in the Easement area without prior written consent of TMPA, then TMPA "shall have the right to remove same." Although the phrase "in its sole

judgment" is absent from that sentence, looking at the entirety of the document, and giving effect to all the provisions, the Easement's language is clear and TMPA's right to identify and remove obstructions, including the retaining wall, is absolute. *See Lynch*, 595 S.W.3d at 686.

Additionally, Appellants assert that the injunction's prohibition from interfering with TMPA's right to remove and trim tree limbs within the Easement property is overly broad because it does not include the limitation that TMPA is only to remove or trim trees when necessary to prevent possible interference with the operation of the lines or to remove possible hazards.

The injunction provides that Appellants are enjoined from "interfering with TMPA's exercise of its easement rights in the future, including the removal and trimming of tree limbs within the Easement Area." As explained previously, TMPA's "easement rights" includes the right to maintain the lines as it may find necessary, and the right to trim and cut down trees and shrubbery to the extent, in its sole judgment, it deems necessary to prevent interference with the operation of the lines or to remove hazards. Therefore, the phrase Appellants refer to as a "limitation" is included within the group of "easement rights" provided to TMPA in the Easement and as that phrase is used in the injunction. The injunction is not overly broad.

4) <u>Irreparable Injury</u>

Appellants assert that TMPA did not provide summary judgment evidence showing an irreparable injury that justified the imposition of the permanent injunctions.

Appellants placed obstacles in the Easement area for a number of years and refused to remove them until ordered to by the trial court when it granted the temporary injunction. Where the evidence shows violations occurring and continuing up to or near the date of trial, the probability of the continuation of the prohibited practices is not a matter susceptible of direct proof and may justify injunctive relief notwithstanding a defendant's cessation of the activity or solemn promises to cease the activity. *Huynh v. Blanchard*, 694 S.W.3d 648, 676 (Tex. 2024).

Moreover, there is a potential for widespread damage due to electrical outages or fire. The evidence shows that the presence of playground equipment under the electric power lines within the Easement area created safety concerns for individuals using that equipment. Also, TMPA was concerned about the possibility of fires in the Easement area, especially due to the presence of the vegetation. Additionally, the propane tank was a safety hazard. Any obstacles in the right of way can be a hazard for repair crews, especially when working at night. If the right of way is not properly

maintained, the integrity and reliability of the line and safety of employees and the public are at risk.

Further, the electrical lines crossing Appellants' property extend from their property on each side delivering electric power to Bryan, Texas and surrounding areas. An outage occurring on their property due to the obstructions would affect many other residents of Brazos County. The potential damages from all of these safety issues are incapable of calculation. Damages would not be an adequate remedy for these injuries. Therefore, TMPA has proven irreparable injury. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (held that an irreparable injury occurs when the injured party cannot be adequately compensated in damages or the damage resulting from it cannot be measured by any pecuniary standard).

5) Adequate Remedy at Law

Appellants contend that the trial court abused its discretion in issuing the permanent injunction because TMPA has an adequate legal remedy. They assert that the Easement provides an express remedy because it gives TMPA the right to remove obstructions from the Easement area.

Generally, the existence of an adequate remedy at law will bar equitable relief. *Campbell v. Wilder*, 487 S.W.3d 146, 152 (Tex. 2016). A party has no adequate remedy at law, so as to support issuance of a permanent injunction,

when damages are incapable of calculation or the party to be enjoined is incapable of responding in damages. *Recon Expl., Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex. App.—Dallas 1990, no writ). As explained above, TMPA's damages are incapable of calculation. Further, if an otherwise complete and adequate remedy at law will lead to a multiplicity of suits, that very fact prevents it from being complete and adequate. *Campbell*, 487 S.W.3d at 152. Here, if TMPA is required to sue Appellants each time they place an obstruction in the Easement area, its remedy at law would not be complete and adequate. *See Campbell*, 487 S.W.3d at 152.

Conclusion

The trial court was not required to set forth in its order the reasons for granting the injunctions, the injunctions are not vague and unclear or overly broad, and TMPA proved irreparable injury and that it had no adequate remedy at law. TMPA proved entitlement to summary judgment as a matter of law. *See Eagle Oil & Gas Co.*, 619 S.W.3d at 705. Accordingly, the trial court did not abuse its discretion by granting the permanent injunctions. *See ORIX Capital Mkts., LLC,* 329 S.W.3d at 44. We overrule Appellants' second issue.

## ATTORNEYS' FEES

In their third issue, Appellants contend the evidence is legally and factually insufficient to support a finding that TMPA incurred $223,556.25 in reasonable and necessary attorneys' fees. In their fourth issue, they contend the trial court abused its discretion by awarding attorneys' fees in the amount of $223,556.25 when there was insufficient evidence that the fees were reasonable and necessary.

Appellants contend there is no evidence showing the rates charged by TMPA's attorneys were in line with those prevailing in Brazos County for similar services by lawyers of reasonably comparable skill, experience, and reputation. Additionally, Appellants assert that, while TMPA presented testimony as to the qualifications of lead counsel Frederick Junkin, it presented no evidence of the qualifications of any other individual who worked on the case.

They further assert that the number of hours worked was not reasonable. Contending that TMPA's billing records show excessive, redundant, or unnecessary hours worked, Appellants identified ten instances where, they argue, the charges are not justified by the evidence. Appellants also assert that TMPA's expert witness, Junkin, did not offer any non-

conclusory testimony to explain the reasonableness of the fees requested, hourly rates, or number of hours worked.

Appellants also assert that TMPA presented no evidence of several of the lodestar factors, and the trial court did not properly apply the lodestar method to ascertain an appropriate attorneys' fee award. Therefore, they argue, the trial court abused its discretion in awarding attorneys' fees when there was insufficient evidence that the fees were reasonable and necessary.

In their fifth issue, Appellants assert the trial court did not explicitly state in its findings of fact or conclusions of law that it was applying the lodestar method. Referencing finding of fact thirteen, which refers to "*Arthur Andersen* factors," Appellants contend the trial court abused its discretion if it did not follow the lodestar method but instead used an alternative method.

**Standard of Review**

The Declaratory Judgments Act provides that in any proceeding under the Act "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Thus, the Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. *Bocquet v. Herring*, 972

S.W.2d 19, 21 (Tex. 1998). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles or to rule without supporting evidence. *Id.* In reviewing an attorney fee award under the Declaratory Judgments Act, the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. *Id.*

While evidentiary-sufficiency issues are not independent grounds for review under the abuse of discretion standard, evidentiary sufficiency remains relevant in assessing whether the trial court erred in applying its discretion. *See Westheimer v. Ziemer*, 702 S.W.3d 621, 628 (Tex. App.—Houston [1st Dist.] 2024, no pet.). A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). If there is any evidence of probative force to support the finding, i.e. more than a scintilla, we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam). If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate

that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.—Tyler 2011, no pet.). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

**Applicable Law**

Texas courts apply the lodestar method to determine what constitutes reasonableness and necessity when awarding attorneys' fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). The fact finder's starting point for calculating an attorneys' fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, the product of which is the base fee or lodestar. *Id.* The fee claimant bears the burden of providing sufficient evidence on both counts. *Id.* Sufficient evidence includes evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* Charges for duplicative, excessive, or inadequately documented work should be excluded. *Id.* at 498-99.

The base lodestar calculation usually includes consideration of at least the following relevant factors to determine a reasonable time and rate:

> the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal service properly, the fee customarily charged in the locality for similar legal services, the amount involved, the experience, reputation, and ability of the lawyer or lawyers performing the services, whether the fee is fixed or contingent on results obtained, the uncertainty of collection before the legal services have been rendered, and results obtained.

*Rohrmoos Venture*, 578 S.W.3d at 500 (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04. However, courts are not required to receive evidence on each factor before awarding attorneys' fees. *Halsey v. Halter*, 486 S.W.3d 184, 189 (Tex. App.—Dallas 2016, no pet.) (mem. op.).

There is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorneys' fees that can be shifted to the non-prevailing party. *Rohrmoos Venture*, 578 S.W.3d at 499. The fact finder may adjust the base lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 502.

**Discussion**

A bench trial was held on July 1, 2021, solely on the issue of attorneys' fees. TMPA's lead counsel, Frederick Junkin, testified at length about his credentials and the work he and his team performed on this case. He has over thirty years of experience as a lawyer and is a partner in a Houston firm. Most of his work is in eminent domain and land related litigation. He also has handled commercial disputes, construction disputes, and title insurance matters. He has handled cases in most areas of the state of Texas including in and around Brazos County. He has been doing legal work for TMPA since 2004.

Junkin explained that, in 2017, TMPA notified Appellants regarding the need to clear the Easement area. Appellants responded with the threat of litigation. Junkin stated that litigation would not have been necessary if Appellants had voluntarily removed the objects and vegetation and agreed to TMPA's proposal to reimburse Appellants for removing the obstructions. After the trial court granted the temporary injunction, Appellants cleared the Easement. TMPA proposed a settlement agreement to bring the litigation to a close. Appellants did not agree to a settlement, and TMPA proceeded to prepare for trial or summary judgment.

Junkin testified that TMPA accomplished its goals in this litigation, and the work performed was necessary to assure that it achieved those results. The billing records reflect that the lawyers and paralegals spent a total of 745 hours working on the case, up to but not including the hearing on attorneys' fees. Junkin explained that they are not seeking attorneys' fees for some of the fees billed because those charges do not relate to TMPA's claim for declaratory relief. Junkin asserted that fees in the amount of approximately $223,000 are attributable to the claims for declaratory relief.

Junkin testified that he and the other lawyers who worked on this matter have the requisite skills to perform the legal services properly. Regarding the rates customarily charged, Junkin explained that there is a range of fees that are charged by firms that practice in Brazos County and surrounding counties that are similar in makeup to Brazos County. He thinks his fees are within the range of fees charged by firms that practice in Brazos County, and his certainly would not be the highest fees or the lowest fees charged by firms that practice in Brazos County. Regarding his fees, Junkin testified as follows:

> [my fees] were certainly consistent with the fees that the firms I have worked for have charged for other clients in Brazos County, other work in Brazos and surrounding counties. As to my fee, it's less than what I'm charging for work for other clients in Brazos and surrounding counties.

He testified that the fees were reasonable and necessary in light of the results obtained. Contrary to Appellants' assertion, this evidence is sufficient to show that TMPA's requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). A rate determined in this way is normally deemed to be reasonable. *Id*.

Junkin testified that the "time was necessary given the nature of the issues, the arguments that were made in the case, and the analysis that was necessary in order to resolve both the substantive claims as well as the related claim for attorney's fees." Junkin testified that the hours spent at the temporary injunction hearing were reasonable and necessary due to the safety concerns regarding the playground equipment, swing set, and propane tank in the Easement area. He testified that the time spent addressing Appellants' special exceptions was reasonable and necessary. Appellants asserted a number of affirmative defenses and claims, and TMPA had to conduct discovery with respect to those and prepare for litigation on the merits. Junkin testified that the hours spent at the hearings on the two motions for summary judgment were reasonable and necessary. He said all of the time spent addressing Appellants' new claims was reasonable and necessary. Junkin

testified that he and his team worked a total of 489.85 hours on the claims for declaratory relief through the beginning of the trial on attorneys' fees.

Junkin testified that TMPA submitted a document to the court, a demonstrative, that sets forth what fees are attributable to the claims for declaratory relief. Through the last invoice, which is dated May 25, 2021, the fees charged for work on the declaratory claims totaled $208,443.75. For time that has not been invoiced, through July 1, 2021, the date of the trial, fees for trial preparation and appearance at trial for Junkin and one associate, totaled $15,112.50. Therefore, fees charged for the declaratory claims totaled $223,556.25. Junkin also testified that TMPA is requesting conditional appellate fees totaling $72,500.

The record includes invoices sent to TMPA for legal work done by Junkin and his team dating from March 11, 2019 through May 25, 2021. The invoices identify the lawyer or paralegal who did the work, the date it was done, a description of the work performed, and the amount of time billed. Junkin testified that associate attorney Leah Nommensen was licensed to practice law in 2016, and Rolf Krueger was licensed in 2012. He stated that Dawn Bebell has been a paralegal longer than he has been a lawyer and Craig Judge has been a paralegal for about as long as he has been a lawyer. Junkin charges

$500 per hour for his work, $450 per hour for Nommensen, $325 an hour for Krueger, $175 or $200 an hour for Bebell, and $175 an hour for Judge.

Appellants contend that Junkin's testimony regarding rates charged and number of hours worked is conclusory. We disagree. Junkin described the history of the case, the pleadings and motions filed, and the hearings that were conducted, all of which are supported by documentation in the record. Junkin explained that TMPA made several attempts to resolve the conflict before and during litigation, but Appellants refused to work with TMPA to avoid or shorten the litigation. Therefore, all steps taken in court were necessary, and all hours worked toward the litigation were also necessary. Although rooted in the attorney's experience and expertise, an attorney's testimony about the reasonableness of his own fees consists of the attorney's personal knowledge about the underlying work and its particular value to the client. *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010). Additionally, Junkin's testimony was supported by invoices identifying the individual who did the work, describing the work done, and specifying the hours spent on the work. The invoices provide evidence of $103,525 in fees to Junkin. The record further provides evidence of $9,750 in fees to Junkin for the time period following the final invoice through the trial on attorneys' fees. Therefore, the evidence shows fees charged for Junkin's work on the declaratory claims totaled $113,275.

Junkin testified as to his experience and familiarity with rates charged in and around Brazos County, stating that his fees are within the range of fees charged by other firms in the area. *See Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517-18 (Tex. 1999) (testimony not conclusory where attorney testified he was a duly licensed attorney, familiar with usual and customary attorneys' fees in the area, and that based on his knowledge of the services rendered, the disputed fee was reasonable). Furthermore, the attorney's testimony is not objectionable as merely conclusory because the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved. *Garcia*, 319 S.W.3d at 641.

Junkin explained his personal knowledge of the facts of the case, and opinions about the reasonableness of the fees requested, hourly rates, and number of hours worked. Therefore, his testimony regarding fees charged for his work, and the reasonableness of the hours he worked, was not conclusory. *See Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019) (held that a conclusory statement asserts a conclusion with no basis or explanation).

Appellants contend that TMPA did not present evidence of some of the lodestar factors and therefore those factors cannot support the reasonableness of the hourly rates and hours worked. As set out above, TMPA presented evidence of many of the lodestar factors. A trial court need not receive evidence

on each factor and may look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied).

In its thirteenth finding of fact, the trial court indicated that it was applying the factors for assessing claims for attorneys' fees outlined in *Arthur Andersen. See Arthur Andersen & Co.,* 945 S.W.2d at 818. Appellants contend this may indicate the trial court did not follow the lodestar method. We disagree. The *Arthur Andersen* factors are subsumed within the lodestar method and are therefore properly considered while applying the lodestar method. *See Rohrmoos Venture*, 578 S.W.3d at 500.

Junkin provided non-conclusory testimony of his credentials and the work he did on the declaratory claims, including the rate he charged, hours worked, and tasks he performed. Further, this testimony is supported by detailed invoices. We conclude there is legally and factually sufficient evidence to support the $113,275 in attorneys' fees awarded to compensate TMPA for Junkin's work. *See Cain*, 709 S.W.2d at 176; *Hernandez*, 164 S.W.3d at 388. Thus, the trial court did not abuse its discretion in awarding the portion of the

total award attributable to work done by Junkin. *See Bouquet*, 972 S.W.2d at 21.

The same cannot be said for the fees awarded for work done by other individuals named in the invoices. To be entitled to attorneys' fees, an attorney must present evidence of his experience, reputation, and ability to perform the legal services involved. *See Rohrmoos Venture*, 578 S.W.3d at 500 (explaining that the base lodestar calculation includes certain factors). The record contains no evidence of experience, qualifications, or reputation of the associate attorneys who worked on this case. This evidence is necessary to show that the fees sought for these individuals were reasonable. *See Aleman v. Standard Cas. Co.*, No. 01-23-00572-CV, 2025 WL 2445991, at*24 (Tex. App.—Houston [1st Dist.] August 26, 2025, no pet.) (mem. op.). Accordingly, the evidence is legally insufficient to support the portion of the attorneys' fee award attributable to the two associate attorneys who worked on this case. *Id.* at 25.

Furthermore, when a party seeks payment for work completed by paralegals, courts require information such as the qualifications of the paralegals to perform substantive legal work, that the paralegal performed substantive legal work under the direction and supervision of an attorney, the nature of the legal work performed, the paralegal's hourly rate, and the

number of hours expended by the paralegal. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). Here, while the invoices identify the nature of the work, the hourly rate, and the number of hours worked by paralegals, there is no evidence in the record of the paralegals' qualifications or that they worked under the supervision of an attorney. In the absence of evidence of the paralegals' qualifications, it is impossible for the trial court to determine the reasonableness of the rates charged or hours worked. *Westheimer*, 702 S.W.3d at 633-34. Therefore, the portion of the attorneys' fee awarded to TMPA for work done by paralegals is legally insufficient. *See Exxon Corp.*, 348 S.W.3d at 215.

As reflected by the invoices covering March 11, 2019 through May 25, 2021, the total attorneys' fee award includes $100,547.50 for work done by two associate attorneys and $4,371.25 for work done by two paralegals during this time period. Further, TMPA was awarded fees in the amount of $5,362.50 for work done by an associate attorney between the end of May through trial on July 1, 2021. Accordingly, the evidence is legally insufficient to support $110,281.25 of the total attorneys' fee award, and the trial court abused its discretion in awarding this amount to TMPA. *See Bouquet*, 972 S.W.2d at 21; *Exxon Corp.*, 348 S.W.3d at 215. When the evidence is legally insufficient, the appropriate disposition is to render judgment. *See Holt Atherton Indus., Inc.*

*v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992); *All Seasons Windows & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 505 (Tex. App.—Texarkana 2005, no pet.). We overrule Appellants' third and fourth issues to the extent they complain of attorneys' fees awarded to TMPA to compensate Junkin in the amount of $113,275. We sustain Appellants' issues three and four in part because the trial court erred in awarding attorneys' fees in the amount of $110,281.25 for work done by associate attorneys and paralegals. We overrule Appellants' issue five because the record does not show the trial court did not follow the lodestar method.

In their sixth issue, Appellants contend the award of attorneys' fees is not equitable or just. They assert the trial court did not consider the entirety of the circumstances or, if it did, the trial court did not properly weigh such circumstances. Whether it is equitable and just to award any portion of reasonable and necessary attorneys' fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004).

The record shows that Appellants had numerous opportunities to avoid, or end, litigation yet they chose to prolong and complicate the conflict. In June 2017, TMPA contacted Appellants asking them to remove the structures that were in the Easement area. TMPA attempted to resolve the matter for

approximately one year before determining that it must proceed with litigation. In response, Appellants filed special exceptions to TMPA's petition and application for temporary and permanent injunctions. They also filed their answer, containing ten affirmative defenses, and, separately, their counterclaims for declaratory judgment and injunctive relief.

After the trial court granted the temporary injunction, and Appellants removed the propane tank, playground equipment, and swing set from the Easement area, TMPA attempted to resolve the lawsuit through a settlement. Appellants did not respond. Therefore, TMPA engaged in discovery and filed its first traditional and no-evidence motions for summary judgment addressing its pending claims for declaratory and injunctive relief and Appellants' counterclaims and affirmative defenses. After Appellants amended their counterclaim to add new claims, TMPA filed its second traditional and no-evidence motions for summary judgment. More than a year after the second summary judgment was granted, the issue of attorneys' fees was tried before the court. More than two years after the trial, on September 25, 2023, the trial court signed the final judgment. This was more than six years after TMPA's initial contact with Appellants regarding the obstructions in the Easement area.

The trial court was free to conclude that Appellants' litigation strategy contributed to the expenses incurred. *See Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, No. 02-24-00572-CV, 2025 WL 3723946, at *20 (Tex. App.—Fort Worth December 23, 2025, no pet.) (mem. op.). Considering the record and all the circumstances of the case, we cannot conclude that the trial court abused its discretion by determining that an award of attorneys' fees to TMPA was equitable and just. *See Ridge Oil Co.*, 148 S.W.3d at 162. We overrule Appellants' sixth issue.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In their seventh issue, Appellants contend that three of the trial court's findings of fact are merely evidentiary and cannot form the basis for TMPA's attorneys' fee award. One of the findings finds TMPA's evidence to be credible and reliable while the other two find that Appellants' evidence was not credible or persuasive.

In a bench trial, the trial court is the sole judge of the credibility of witnesses. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The trial court's findings of fact are not conclusive when the appellate record contains a complete reporter's record, and an appellant may challenge those findings for evidentiary sufficiency. *Miranda v. Byles*, 390 S.W.3d 543, 553 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (op. on reh'g).

Appellants attacked the sufficiency of the evidence to support the award of attorneys' fees in their third and fourth issues. Their issue seven presents nothing for review, and we overrule it.

In their eighth issue, Appellants contend the trial court erred in refusing to make requested additional findings of fact and conclusions of law relating to the lodestar calculation and equitable arguments for adjustment. They assert they requested additional findings and conclusions to address the lack of specificity as to how attorneys' fees were calculated.

A party may request additional findings of fact and conclusions of law if the party believes that the court's findings and conclusions are deficient in some way. *Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The trial court has no duty to make additional findings that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions that are appropriate. *Id.* Failure to make additional findings and conclusions may constitute reversible error if the appellant is prevented from adequately presenting the matter being complained of on appeal. *Id.* at 88-89.

Appellants admit they were able to present their arguments on appeal on the attorneys' fee issue even in the absence of the requested additional findings. We conclude the record sufficiently shows the basis of the trial court's

award of attorneys' fees even in the absence of the requested additional findings of fact and conclusions of law. Accordingly, we overrule Appellants' eighth issue.

## TEXAS RULE OF CIVIL PROCEDURE 47

In their ninth issue, Appellants contend the attorneys' fee award in the final judgment is void because it does not conform to TMPA's pleadings. Specifically, they assert that TMPA's petition stated that TMPA sought "monetary relief of $100,000 or less and non-monetary relief." Because the fee award is greater than $100,000, the argument continues, the judgment does not conform to the pleadings and must be reversed.

In the section of its petition entitled "Jurisdiction and Venue," TMPA states that it "seeks monetary relief of $100,000 or less and non-monetary relief. This Court has jurisdiction of the matters in controversy because the damages and relief sought are within the jurisdictional limits of the Court." In other sections of the petition, TMPA requested an award of reasonable and necessary attorneys' fees pursuant to the Texas Declaratory Judgments Act.

Rule of Civil Procedure 47 provides that an original pleading which sets forth a claim for relief shall contain, in addition to other requirements not at issue here, and with one exception not applicable here, a statement that the party seeks one of five categories of relief. *See* TEX. R. CIV. P. 47(c) (amended

2020).[2] This statement of relief ensures that parties will plead into or out of the expedited actions process in Texas Rule of Civil Procedure 169. *See* TEX. R. CIV. P. 169 (amended 2020); 47 cmt. (2013). Pursuant to the 2013 version of Rule 47(c)(1), if the party seeks only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, that suit is governed by the expedited actions process in Rule 169 and the discovery limitations in Rule 190.2. *See id.* R. 169(a), (d)(1); 190.2(a)(1); 47 cmt. (2013). The specific statements of relief under Rule 47(c)(2) to (5), including the statement in TMPA's petition, provide information on the nature of the case and do not affect a party's substantive rights. *See id.* R. 47 cmt. (2013).

We conclude that the statement that TMPA seeks monetary relief of $100,000 or less does not include its request for attorneys' fees. TMPA pled for attorneys' fees pursuant to the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Accordingly, the trial court's judgment conformed to the pleading. We overrule Appellants' ninth issue.

## CONCLUSION

The trial court did not err in granting the declaratory judgment and permanent injunctions in favor of TMPA. Because the trial court abused its

---

[2] Because this case was filed before January 1, 2021, the 2013 version of Rule 47 applies here. Our discussion refers to the 2013 version.

discretion with regard to a portion of the attorneys' fees awarded to TMPA, we modify the trial court's judgment to vacate the $110,281.25 award of attorneys' fees for the associate attorneys and paralegals.  We affirm the remainder of the judgment as modified.[3]

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  May 28, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Modified in part, affirmed as modified
CV06



---

[3] We need not reach Appellants' tenth issue.  *See* TEX. R. APP. P. 47.1.